Charles P. Taylor, Trustee, Appellee, v. Andrew T.
Osman et al. Andrew A. Scowley, Appellant.

Gen. No. 7,503.

MORTGAGES—*right of mortgagee to lien upon crops after severance
from mortgaged premises.* Where pending proceedings to foreclose
a trust deed conveying to the trustee as security "all rentals,
rights, interests and appurtenances" appertaining to the premises,
and "all right to retain possession of said premises after default or
breach of any covenant," the owner of the equity of redemption
quitclaimed the same to defendant, at the same time assigning to
him the lease under which a tenant held possession, and the trustee
failed to secure the appointment of a receiver to take possession
of the premises or of a corn crop then maturing thereon, but per-
mitted defendant and the tenant to sever and divide such crop
pursuant to the terms of the lease, such trustee was not entitled
to a lien upon the rents and such corn crop.

Appeal by defendant from the Circuit Court of La Salle county;
the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at
the April term, 1925. Reversed and remanded with directions.
Opinion filed March 3, 1926.

R. A. GREEN and C. S. CULLEN, for appellant.

MCDOUGALL & CHAPMAN, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.
This is an appeal by Andrew A. Scowley, appellant,
from an order entered by the circuit court of LaSalle
county in which it was held that Charles P. Taylor,
trustee, appellee, had a lien upon the rents and the
corn crop raised upon the premises covered by the
trust deed which was then in process of foreclosure.
    It appears that in February, 1920, S. B. Williams
and James P. Catlin were the owners of the lands and
premises on which the corn was raised that is involved
in this proceeding; that on March 1, 1920, Williams and
Catlin executed a mortgage to Duncan McDougall to

secure $45,000 and conveyed the said lands owned by them together with all rentals, rights, interests and appurtenances thereunto appertaining, waiving all right to retain possession of said premises by default in payment or breach of any covenant.

Said mortgage also provided that in the case of the filing of any bill to foreclose the court upon application may appoint any competent person receiver, with the usual powers, including the leasing and collecting of rents, issues and profits and the net rentals, until sale to be applied toward the payment of indebtedness secured thereby and after the sale the receiver shall continue to retain possession and collect the rents, issues and profits, which said mortgage was filed for record on March 6, 1920.

On March 1, 1921, Williams and Catlin conveyed the same real estate to Andrew T. Osman and on said date Osman executed a trust deed to Charles P. Taylor, trustee, to secure six notes aggregating $25,000, conveying the same premises together with all rentals, rights, interests and appurtenances thereunto appertaining and releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Illinois and all the right to retain possession of said premises after default in payment or breach of any covenant therein contained.

Said trust deed provided that in case of default in any covenant, agreement or obligation herein, and such default shall continue for 30 days, all of the indebtedness hereby secured shall, at the option of the trustee, or at the option of the legal holders of said notes, or any of them, become due and collectible at once, by foreclosure or otherwise, without notice, and it is hereby covenanted and agreed that this indenture, and the notes secured thereby, are executed under and are in all respects to be construed in accordance with the laws of the State of Illinois; and it was further provided that in case of the filing of any bill to foreclose the

courts shall, upon application, appoint any competent person receiver with the usual powers including the leasing and collecting of rents, issues and profits, the net rentals until sale to be applied toward the payment of indebtedness secured thereby; and after the sale of the premises the receiver shall as a matter of right continue to retain possession thereof and collect the rents, issues and profits and pay the taxes and insurance premiums until the expiration of the period of redemption. Which said trust deed was entered of record in the recorder's office of LaSalle county on the 5th day of March, 1921.

The record further discloses that the said Andrew T. Osman on June 7, 1922, conveyed the said premises to Richard Powers; that Powers conveyed the same premises to I. Ellis Glaseman on November 29, 1922, subject to the first mortgage of $45,000, and also subject to the $25,000 mortgage.

It is further shown by the record that Osman, Powers and Glaseman all failed to pay the interest and the taxes extended against the said lands and premises; that such default in the failure to pay the interest and taxes continued for more than 30 days and that the entire indebtedness for that reason became due and collectible at the option of the trustee and that the appellee was authorized under the terms of the trust deed to institute foreclosure proceedings.

On August 27, 1924, Charles P. Taylor, trustee, filed a bill to foreclose the trust deed executed by Osman to him as trustee to secure the said sum of $25,000. While said foreclosure proceedings were pending, Glaseman, on October 22, 1924, conveyed the said lands to Andrew A. Scowley, appellant, by quitclaim deed. The premises were occupied by Elmer Huss, a tenant under a lease from Glaseman, and his tenancy was from March 1, 1924, to March 1, 1925. At the time of the receiving of the quitclaim deed by Scowley, Glaseman assigned him his lease on said premises.

The lease provided that the tenant, Huss, should give one-half of the crop to the landlord for rent and should haul it to the elevator at Greenridge, Illinois. Huss raised a corn crop on the premises in 1924, and it is one-half of this crop that is involved in this suit, as appellant claims the landlord's share by reason of his having received the quitclaim deed and lease from Glaseman. Huss began husking his crop about November 1, 1924, and by the 25th of the month he had one-half or more of it gathered and cribbed. Appellant testified that on November 25 he was on the farm and that he and the tenant divided the corn.

Charles P. Taylor, trustee, the complainant in the suit to foreclose the Osman mortgage, made a motion on December 1, 1924, for the appointment of a receiver to rent the mortgaged premises and to collect the rents, and on said date an order was entered appointing Frank H. Hook. A bond was filed by the receiver on December 3, 1924. A few days after the receiver was appointed he went upon the premises but the record does not disclose that he made any effort to take possession of the land or corn.

Appellant filed a petition in said foreclosure proceedings asking the court to enter an order finding that the corn was his property, and that the receiver be enjoined from interfering in any manner with his removing the corn. A hearing was had on the petition and an order was entered finding that Taylor, trustee, had a lien on the crops grown on the mortgaged lands for the payment of the notes secured by the trust deed, the costs of suit and the taxes.

It is the contention of the appellant that as long as the mortgagor is allowed to remain in possession he is entitled to receive the rents and profits, and even if the rents and profits are pledged to secure the mortgage debt with the right in the mortgagee to take possession upon default, the mortgagee is not entitled to

the rents until he takes actual possession or until possession is taken in his behalf by a receiver.

It is further the contention of appellant that the mortgage does not create a lien upon the rents and profits although they be expressly pledged to the same extent that it creates a lien upon the lands. If the mortgagee does not go into possession, as he has a right to do in this State, or take possession by a receiver, there is no method by which he may obtain the rents, as the holder of the equity of redemption is entitled to remain in possession until the master in chancery delivers his deed to the purchaser under the foreclosure sale.

It is the contention of appellee that as the mortgage or trust deed pledged for the purpose of securing the notes, the lands and premises together with all rentals, rights, interests and appurtenances he has a lien upon the crops in question.

It is conceded the Osman mortgage conveyed the described real estate, "together with all rentals, rights, interests and appurtenances thereunto appertaining," and the mortgagor waived the right to retain possession after default in payment, and agreed that a receiver with usual powers should be appointed. If the mortgagee had caused a receiver to be appointed and such receiver had taken possession of the mortgaged premises before the crops were severed from the soil, appellant, as the owner of the equity of redemption, could not have complained. That was not done. The appellant was permitted to remain in possession by his tenant and to sever his crop of corn from the land, and the crop was divided between the landlord and the tenant, and the tenant thereafter had no interest in or title to the part so set off to appellant. It is not the rule, as we understand it, as is contended for by appellee, that a mortgagor can be called upon to account to the mortgagee for rents and profits of the mortgaged premises while the mortgagor remains in possession.

*Moore v. Titman,* 44 Ill. 367; *Mississippi Val. & W. Ry. Co. v. United States Exp. Co.,* 81 Ill. 534; *Silverman v. Northwestern Life Ins. Co.,* 5 Ill. App. 124; Jones on Mortgages (5th Ed.), sec. 670.

As long as the mortgagor is allowed to remain in possession he is entitled to receive the rents and profits, and even if the rents and profits are pledged to secure the mortgage debt, with the right in the mortgagee to take possession upon default, the mortgagee is not entitled to the rents until he takes actual possession or until possession is taken in his behalf by a receiver. The mortgage does not create a lien upon rents and profits, although they be expressly pledged, to the same extent that it creates a lien upon the land. If the mortgagee does not go into possession, as he has a right to do in this State, or take possession by a receiver, there is no method by which he may obtain the rents, as the holder of the equity of redemption is entitled to remain in possession until the master in chancery delivers his deed to the purchaser under the foreclosure sale. The mortgage in such case merely gives the mortgagee a right to take such steps whereby he can obtain an equitable lien, as it is sometimes called, on the rents and profits; and until such steps are taken, the mortgagor or the owner of the equity of redemption is entitled to the possession of the mortgaged premises, and to the rents and profits thereof.

In Jones on Mortgages (5th Ed.), sec. 670, it is said:

"So long as the mortgagor is allowed to remain in possession he is entitled to receive profits of the mortgaged estate. His contract is to pay interest, not rent. Although the mortgagee may have the right to take possession, upon a breach of the condition, if he does not exercise that right, he cannot claim the profits. Upon a bill in equity to obtain foreclosure and sale, he may in proper cases apply for the appointment of a receiver to take for his benefit the earnings of the property. He is then confined to the rents and profits

accruing during the pendency of the suit. If he neglects to apply for a receiver, the final decree, if silent upon this subject, does not affect the mortgagor's possession or rights to the earnings in the meantime. It is only after sale under the decree, except where statutes provide otherwise, that the mortgagor is wholly divested of title and consequently of right to possession. Unless restrained by the terms of the mortgage, the mortgagor in possession may work mines or quarries upon the mortgaged property, and whatever he severs from the realty becomes unencumbered personally, and his own property. Even if the rents and profits are expressly pledged for the security of the mortgaged debt, with the right in the mortgagee to take possession upon default, the mortgagee is not entitled to the rents and profits until he takes actual possession, or until possession is taken in his behalf by a receiver."

In *Cross v. Will County Nat. Bank,* 177 Ill. 33, at page 38 it is said:

"The rule at common law, and laid down by this court, is that a mortgagor is not required to account to the mortgagee for rents and profits while he remains in possession. *Moore v. Titman, supra; Mississippi Val. & W. Ry. Co. v. United States Exp. Co., supra.* A mortgagee cannot interfere with the right of a mortgagor to collect the rents until he enters upon the property, or gives notice to tenants in possession thereof, or files a bill for the foreclosure of his mortgage and obtains, in aid of it, the appointment of a receiver."

A provision in the real estate mortgage entitling the mortgagee to a receiver of rents and profits in an action to foreclose, and assigning them to the mortgagee as a further security in the event of default, does not charge the mortgagee with them from time of default, without some act on his part to secure possession of them. *Sullivan v. Rosson* [223 N. Y. 217], 4 A. L. R. 1400.

In a note to be found on page 1410, in *Sullivan v. Rosson, supra,* the following rule is announced:

"A provision giving the mortgagee a lien on such rents and profits, and authorizing the mortgagee to take possession in case of default, and collect and receive the rents and profits, does not vest such rents and profits in the mortgagee without action on his part."

As sustaining the doctrine announced in the note many cases are cited, including *Mississippi Val. & W. Ry. Co. v. United States Exp. Co., supra.*

Also on page 1411, *Sullivan v. Rosson, supra,* in a note we find the following:

"The inclusion of the rents and profits with the appurtenances to the land described is not enough to deprive the mortgagor of the right to receive the rent to his own use, where the mortgagee neither gets, attempts to get, nor demands possession, either before or after condition broken. *Silverman v. Northwestern Mut. Life Ins. Co.,* 5 Ill. App. 124."

The rule that a mortgagee has no specific lien upon rents and profits until he has taken possession, or has secured the appointment of a receiver in a suit to foreclose, is clearly set forth in *Teal v. Walker,* 111 U. S. 242, where at page 248 it is said:

"We believe that the rule is without exception that the mortgagee is not entitled to demand of the owner of the equity of redemption the rents and profits of the mortgaged premises until he takes actual possession. * * * The American cases sustain the rule that so long as the mortgagor is allowed to remain in possession he is entitled to receive and apply to his own use the income and profits of the mortgaged estate; and, although the mortgagee may have the right to take possession upon condition broken, if he does not exercise this right he cannot claim the rents; if he wishes to receive the rents he must take means to obtain the possession. *Wilder v. Houghton,* 1 Pick. [Mass.] 87;

*Boston Bank v. Reed,* 8 Pick. [Mass.] 459; *Noyes v. Rich,* 52 Me. 115.''

While there is some language used in the cases relied upon by appellee that would appear to support his contention, yet when the facts in each case are considered and understood it will be found that there is nothing in them in conflict with the conclusion herein reached. The great weight of authority is to the effect that the mortgagee cannot require a mortgagor to account for the rents and profits of the mortgaged premises while he is in possession. In the instant case, Glaseman and his grantee, Scowley, were in possession of the farm and raised the crop in dispute, and the entire corn crop was husked and cribbed before the receiver took any steps towards taking possession, even constructively; and the mortgagee has no right to take the corn raised and removed from the land before he obtained possession.

We are therefore of the opinion that the circuit court erred in entering its order finding that the respondent Taylor, trustee, had a lien upon the corn of appellant for the payment of the notes secured by the mortgage and that appellant was not entitled to the corn; and we are further of the opinion that the court erred in directing the receiver to sell said corn and hold the proceeds and to await the order of the court. The order of the circuit court is reversed and the cause remanded with directions to the court to enter an order finding that appellant, Andrew A. Scowley, is the owner of the corn in question and that he be permitted to remove the corn from the mortgaged premises, unless it has been sold; and in the event the corn has been sold then the court will enter an order directing the receiver to turn the proceeds over to appellant Scowley.

*Order reversed and remanded with directions.*