THE DE KALB BANK, Plaintiff-Appellee and Cross-Appellant, v. ROBERT PURDY *et al.*, Defendants-Appellants and Cross-Appellees.

Second District   No. 2—87—0113

Opinion filed February 11, 1988.—Rehearing denied April 6, 1988.

710

Keith L. Foster, of Cliffe, Foster, Shapiro & Corneille, of De Kalb, and Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago (David Lincoln Ader, of counsel), for appellants Robert Purdy and Mary Lois Purdy.

George H. Litow, of Paw Paw, for appellant Myron Kinzler.

Charles G. Brown, of Boyle, Cordes, Witheft & Brown, of De Kalb, and James M. Breen, of Chapman & Cutler, of Chicago (James F. Gebhart, of counsel), for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendants, Robert Purdy, Mary Lois Purdy and Myron Kinzler, appeal the judgment of the circuit court of De Kalb County in favor of plaintiff, The De Kalb Bank, awarding plaintiff the sum of $105,571.31 in the possession of the clerk of the court and additional sums with prejudgment interest in the amount of $79,056.33. The suit involved the rights to rents received and to be received by defendants, Purdys, from the other defendant, Kinzler. Plaintiff claimed an interest in the rents under a trust deed executed in its favor by the Purdys to secure various loans received from plaintiff.

In March 1983, the Purdys were indebted to plaintiff in the amount of $3,088,556.27 in principal and interest for money loaned to them by plaintiff for the operation of their farms. On March 15, 1983, the Purdys and plaintiff executed a loan agreement and a trust deed by which plaintiff agreed to refinance the Purdys' current debt and loan additional sums up to a total indebtedness of $3,500,000 for the operation of the Purdys' farms. This agreement was secured by a trust deed on the farms executed by the Purdys in favor of plaintiff. The new due date on the existing and future loans was February 1, 1984. Plaintiff also agreed to look only to the security for satisfaction of the debt upon default. Plaintiff agreed not to attempt to recover the loans from the Purdys' personal assets, or medical building owned by the Purdys, or from the income of the Purdys' medical practice.

On January 31, 1984, the Purdys leased their farms to Myron Kinzler, a friend and the farm manager for the Purdys. One day later, on February 1, 1984, the Purdys defaulted on their loans to plaintiff. Plaintiff learned of the leases to Kinzler when they were recorded and notified Kinzler on February 17, 1984, by a certified letter of the prior encumbrances of plaintiff and its intent to pursue necessary action. Plaintiff's trust deed had been properly recorded in March 1983.

Under the terms of the trust deed, upon default, plaintiff had several rights. One right was the right to possession and to receive the rents and profits. The lease provided for Kinzler to pay rent to the Purdys as follows:

"The sum of $25,000.00 on or before the date hereof ***; 35 bushels of corn per tillable acre, payable in kind at the time of harvest; and, in the event Tenant places this acreage into the 1984 Federal Feed Grain Program, one-half (1/2) of all deficiency payments payable to Tenant under said program, payable at the time any such payments are received by the Tenant."

On October 26, 1984, plaintiff procured an order for injunction against the Purdys restraining them from transferring, assigning or disposing of any rent to be received by them from Kinzler under their lease with Kinzler. The order provided that the corn could be harvested and sold, provided that the proceeds of the sale and a full accounting were filed with the clerk of the court. In addition, the order provided that if the Purdys received any payments due to the placement of the farms into the Federal Feed Grain Program by tenant, the parties by stipulation, or the court on either party's motion would make an appropriate ruling as to the sequestration of such payments. This order was effective pending a final hearing on the cause. Defendant Kinzler was represented at the injunction hearing by his own counsel, and though the order did not specifically restrain him, he was ordered to comply with the terms of the injunction.

Plaintiff alleged numerous grounds for relief, all of which centered on the loan agreement and trust deed and the actions of the Purdys and Kinzler surrounding the lease of their farms the day before they defaulted on their loans with plaintiff. The trial court found the Purdys in default and that plaintiff was entitled to a certificate of deposit in the amount of $105,571.31, representing the proceeds from the sale of corn received by the Purdys under their lease with Kinzler. In addition, the court construed the lease agreement between the Purdys and Kinzler and found Kinzler owed additional rents repre-

senting improper charges deducted from the sale of the corn as well as one-half the deficiency payments Kinzler received under the Federal Feed Grain Program. The Purdys and Kinzler were found jointly and severally liable for these additional amounts, and the court also awarded prejudgment interest for a total judgment (in addition to the certificate of deposit) of $79,056.33 in favor of plaintiff. All parties have appealed.

Defendants argue on appeal that the trial court erred in: (1) finding that the order of injunction sequestering the rents to be received by the Purdys was effective to perfect plaintiff's lien on the rent; (2) in construing the lease so as to find additional rent due from Kinzler to the Purdys and, therefore, to plaintiff under the trust deed; (3) in awarding prejudgment interest to plaintiff; (4) in finding the Purdys jointly and severally liable with Kinzler for the additional rents due; and (5) in failing to apply the doctrine of *laches* to bar plaintiff's cause of action as against Kinzler.

Plaintiff raises one issue on the cross-appeal. Plaintiff argues the trial court erred in finding that only Kinzler was a tenant under the lease and not finding that Kinzler's partner was also a tenant, and, therefore, additional relief representing one-half the payments received by Kinzler's partner under the Federal Feed Grain Program is due plaintiff under its lien on the rents of the Purdys' farms.

First, we address the issue of whether or not the trial court properly found that the Bank perfected its lien on the rents under the terms of the trust agreement and Illinois law concerning mortgage agreements.

The relevant part of the trust deed provides:

> "Now, if default be made in the payment of the said note or notes ***, or in case *** of a breach of any of the covenants or agreements ***, then in such case the whole said principal sum and interest, secured by the said note or notes, shall thereupon, at the option of the legal holder *** become immediately due and payable; and on the application of the legal holder of said note or notes or any of them it shall be lawful for the said grantee, or its successors in trust, to enter into and upon and take possession of the premises hereby granted, or any part thereof, and to collect and receive all rents, issues and profits thereof."

The Purdys argue: (1) that the rules of contract construction require the court to find that entry and possession by the Bank is a precondition to plaintiff's right to receive the rents under the terms of the trust deed; (2) the actions of plaintiff in obtaining an order of injunc-

tion sequestering the rents was not equivalent to the entering and taking possession required, and, therefore, the Purdys, as a mortgagor in possession, are entitled to rents deposited with the court. Defendants further argue that, notwithstanding the trust deed construction, Illinois law requires entry and possession or the appointment of a receiver before a mortgagee can perfect his rights to collect rents and profits from the mortgaged premises. Defendants argue that the absence of the formal appointment of a receiver to take possession and collect the rents defeats any rights to the rents plaintiff claimed by way of the trust deed. Defendants' argument is one of form and not substance.

On October 2, 1984, plaintiff filed a complaint with the circuit court of De Kalb County seeking a declaratory judgment, an injunction and other relief. Plaintiff sought a declaration as to its rights in the disputed rental payments based on the Purdys' default in payment to plaintiff as well as two other institutions with interests senior to plaintiff's. The complaint also alleged that plaintiff had obtained qualified appraisals which indicated the subject security was valued at $1 million less than the debts secured to plaintiff and two senior liens, all of which were currently in default. Plaintiff also prayed for a temporary and permanent injunction restraining defendants from disposing of any rents already received or to be received in the future and also prayed that all such rents be paid to the clerk of the court or other entity selected by the court until a final hearing on the merits of the cause. The trial court granted the injunction and ordered all future rents received to be turned over to the clerk of the court pending a final hearing on the merits.

This interlocutory order was not appealed and is not at issue on this appeal. The effect of the trial court's sequestration of the rents in the custody of the clerk is at issue. The trial court found that the sequestration of the rents was a sufficient act on the part of plaintiff to perfect its lien on the rents as against defendants.

■ A trust deed in the nature of a mortgage is deemed to be a mortgage and subject to the same rules as mortgages. (Ill. Rev. Stat. 1985, ch. 30, par. 105.) When a mortgage agreement or trust deed waives all right of the mortgagor to possession and further pledges rents and profits to the mortgagee upon default, the mortgagee is not entitled to the rents until he takes actual possession or until possession is taken on his behalf by a receiver. (*Taylor v. Osman* (1926), 239 Ill. App. 569, 574.) "The mortgage in such case merely gives the mortgagee a right to take such steps whereby he can obtain an equitable lien, as it is sometimes called, on the rents and profits; and until

such steps are taken, the mortgagor[ as] owner of the equity of redemption is entitled to the possession of the mortgaged premises, and to the rents and profits thereof." (239 Ill. App. at 574.) The rule at common law is that a mortgagor is not required to account to the mortgagee for rents and profits while he remains in possession. (239 Ill. App. at 575.) What is clear in *Taylor* is that a provision in the mortgage agreement giving the mortgagee a lien on rents and profits does not vest such rents and profits in the mortgagee without action on the mortgagee's part. (239 Ill. App. at 576.) Defendants rely heavily on *Taylor* in support of their argument that the appointment of a receiver is required, before plaintiff's rights to any rents are perfected. However, *Taylor*, though based upon facts very similar to the facts in the instant case, is distinguishable in one very important aspect. The trial court in *Taylor* found that the mortgagor had already received the corn due as rent prior to the filing of an action for foreclosure and appointment of a receiver and, therefore, found the mortgagor entitled to the corn. In the instant case, plaintiff, as mortgagee, did not pursue nor was it entitled to the initial $25,000 rent payment made by Kinzler to the Purdys. Defendant Purdy was only ordered to pay into the court future rent received and plaintiff was only awarded rent owing after the October 26, 1984, order of the court. The corn, payable in kind as rent at time of harvest under the lease, was not harvested and, therefore, not payable[ as rent until after the October 26, 1984, order of the court.

■ First, we note that the appointment of a receiver is not an absolute right of a mortgagee, even where the parties' agreement provides for such an appointment, but is a matter addressed to the sound legal discretion of the court. (*Stella v. Mosele* (1939), 299 Ill. App. 53, 54-55, 19 N.E.2d 433, 434.) A review of the record indicates that the trial court could have properly appointed a receiver for the benefit of plaintiff in its order of October 26, 1984. (See *Home Savings & Loan Association v. Samuel T. Isaac & Associates, Inc.* (1981), 99 Ill. App. 3d 795, 802, 425 N.E.2d 985, 991.) A receivership is like a preliminary injunction in that both are forms of equitable relief, and, in the instant case, the injunctive relief merely served to accomplish the objectives of receivership. (See 99 Ill. App. 3d at 801, 425 N.E.2d at 991.) The October 26, 1984, order of the court placed the disputed rents in the possession of the court pending a final determination of the rights of the parties to the rents. The appointment of a receiver would have accomplished nothing more. A receiver is an officer of the court and subject to its orders. (*Chicago Title & Trust Co. v. Barnett Vincennes Hotel Corp.* (1939), 300 Ill. App. 200, 204, 20 N.E.2d 871,

873.) Property in the hands of a court-appointed receiver is in the custody of the court, of which he is an officer. (300 Ill. App. at 204, 20 N.E.2d at 873.) A receivership is not the only method by which a contract, such as a mortgage whereby rents and profits are conveyed with real estate as security for a debt, may be enforced, but the court may, in its discretion, use whatever method seems best as the necessities and exigencies of the situation may require. *Quitman v. Dowd* (1939), 301 Ill. App. 403, 406, 23 N.E.2d 207, 209.

In *State Bank & Trust Co. v. Massion* (1935), 279 Ill. App. 234, the court allowed the mortgagor to remain in possession, collect rents and pay expenses under the orders of the court, and such orders were as effectual as the appointment of a receiver and sufficient to divest the mortgagor of any rights as against the mortgagee, whose security was insufficient, to rents remaining in the possession of the court. (279 Ill. App. at 239.) The *Massion* court relied on cases from other jurisdictions which held any proper procedure which would empower the court to control the rents and profits would be sufficient to vest the mortgagee with title to the rents and profits. 279 Ill. App. at 240.

■ Plaintiff asked the court to provide for payment of rents to the clerk or any other entity deemed proper by the court. A receiver would have been a proper party, and defendants do not contend otherwise. However, the court was not required to appoint a receiver under Illinois law. It was not an abuse of discretion for the court to enjoin defendants, Purdys, from disposing of any future rents received and ordering defendants to pay any rent received to the clerk of the court in lieu of an appointment of a receiver.

■ Nor is our holding affected by the express language of the trust deed. Even if we accept defendants' argument that possession was a precondition to plaintiff's right to receive the rents, plaintiff's remedy of possession and collection of rents could not be deemed plaintiff's exclusive remedy. The language of the trust deed is permissive. It states that "it shall be lawful for said grantee *** to enter and take possession of the premises ***, and to collect the rents, issues and profits thereof." The basic rule is that parties to a contract may limit their rights, duties and obligations by express agreement. However, the parties must clearly indicate that the parties intend that the stipulated remedy be the sole or exclusive remedy. (*Structural Sales, Inc. v. Vavrus* (1985), 132 Ill. App. 3d 718, 720, 477 N.E.2d 745, 747.) In the instant case, the trust deed does not clearly indicate that plaintiff's rights to make an entry and take possession and collect rents is the sole or exclusive remedy or method for perfecting its lien on the rents in the case of a default by the borrower.

The trial court, after determining that plaintiff was entitled to the rent owing or payable after the October 26, 1984, order of injunction, proceeded to construe the rents provision of the lease. The rental provision of the Kinzler lease on the Purdys' farm provided for payment of the rent as follows:

"The sum of $25,000,00 [*sic*] on or before the date hereof \*\*\*; 35 bushels of corn per tillable acre, payable in kind at the time of harvest; and, in the event Tenant places this acreage into the 1984 Federal Feed Grain Program, one-half (½) of all deficiency payments payable to Tenant under said program, payable at the time any such payments are received by the Tenant."

The trial court found the lease ambiguous or silent on several issues involved in computing the amount of rent due. First, the term "corn" was found to be ambiguous because the industry custom concerning the type of lease implied corn meant No. 2 corn as opposed to wet corn, the difference being that No. 2 corn is the standard in which corn as a commodity is traded or business transacted. Wet corn has a higher moisture content, and thus a bushel of wet corn is approximately 15% heavier than No. 2 corn with the consequence that before being sold, a bushel of wet corn must be processed into No. 2 quality corn before it is marketable or wet corn would be discounted by the costs incurred to process it into No. 2 corn. In addition, the drying of wet corn to No. 2 corn results in shrinkage so that in practice a bushel of wet corn contains less than a bushel of No. 2 corn. In the instant case, the difference between the wet corn delivered under the lease by Kinzler and the No. 2 corn found by the court to be due under the lease, was 7,849.25 bushels. This represented the difference between the 62,895 bushels of wet corn Kinzler delivered under the lease and the 55,045.75 bushels which resulted after processing to No. 2 corn. At $2.61 per bushel the difference in rent amounted to $20,486.54. In addition, the Purdys were charged by Kinzler for the costs of harvesting, combining and trucking of the corn. The lease was silent on who should bear such production costs. The last alleged ambiguity concerned the provision for payment of one-half the deficiency payments received by "tenant" under the 1984 Federal Feed Grain Program. Defendants argued that an oral precondition existed requiring that the Purdys be able to participate in the program prior to any requirement of the "tenant" to pay. Plaintiff cross-appealed and argues that "tenant" includes Kinzler's partner, Jerry Davis, who never signed the lease but also received money under the Federal Feed Grain Program. Plaintiff argues that the evidence established

that Kinzler signed in his partnership capacity, and, therefore "tenant" means the partnership of Kinzler and Davis, and, therefore, plaintiff is also entitled to one-half of Davis' payments under the program.

■ ■ Defendants argue that the trial court reformed the contract under the guise of interpreting the contract. Their argument is without merit. The trial court properly found latent ambiguities to exist. An ambiguous contract is one susceptible to more than one meaning or one obscure in meaning because of indefiniteness. (*St. Joseph Data Service, Inc. v. Thomas Jefferson Life Insurance Co. of America* (1979), 73 Ill. App. 3d 935, 940, 393 N.E.2d 611, 616.) A latent ambiguity exists where a contract's terms are clear on their face, but extrinsic evidence creates uncertainty as to the meaning of the terms. (73 Ill. App. 3d at 941, 393 N.E.2d at 617.) A contract should be construed as a whole to give effect to the apparent intention and purpose of the parties at the time that they entered into the contract. (*De Witt County Public Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 18, 469 N.E.2d 689, 695.) Usually, the question of whether a contract is ambiguous is a question of law. (*National Tea Co. v. American National Bank & Trust Co.* (1981), 100 Ill. App. 3d 1046, 1049, 427 N.E.2d 806, 808.) However, where extrinsic evidence consisting of testimony of witnesses, and not consisting mainly of documents, is introduced to aid in interpreting a contract, the meaning of language in the contract is a question of fact, whose determination will not be reversed unless contrary to the manifest weight of the evidence. *Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 398, 457 N.E.2d 66, 71.

■ In the instant case, all of the experts, and even defendants, testified to the customary and standard usage of No. 2 corn in the industry. The experts testified that unless a landlord was in the feed or cattle business, he would have no reason to want wet corn. All the testimony of the experts indicated that the value of corn was determined relative to the No. 2 standard. Defendants testified they meant wet corn. The trial court was in the best position to assess the credibility of the testimony. In light of the overwhelming testimony as to the standard reference of corn to mean No. 2 corn and not wet corn, the trial court's finding was not against the manifest weight of the evidence.

■ The next ambiguity concerned whether the landlord (Purdy) or the tenant (Kinzler) was to cover the costs of harvesting, combining and trucking the corn. Both the Purdys and Kinzler testified they did not discuss the issue at the time of contracting. They testified

that they met sometime in August of 1984 and agreed that the Purdys would cover such costs. The existence or nonexistence of an oral contract is a question of fact, and the fact finder's determination will not be reversed unless it is against the manifest weight of the evidence. (119 Ill. App. 3d at 400, 457 N.E.2d at 73.) The expert testimony concerning leases like the one at issue in this case supported a finding that the custom was for the tenant to deliver the corn to the elevator for the landlord to sell. Again, there was conflicting testimony between the experts and defendants. The trial court's finding that Kinzler and not the Purdys was to cover the disputed costs of harvesting, combining, and trucking the corn was not against the manifest weight of the evidence.

■ The last finding of the trial court concerning the lease disputed on appeal is the interpretation of the provision requiring tenant to pay one-half of all deficiency payments received by tenant under the 1984 Federal Feed Grain Program. Defendants argued an oral precondition existed requiring that the Purdys be able to participate in the program with the tenant prior to the tenant's obligation to pay one-half of all deficiency payments received by the tenant. Plaintiff argued the lease does not expressly or implicitly contain such a precondition and defendants never intended such a precondition at the time of contracting but that the Purdys failed to collect such payments. Kinzler did not make such payments because at the time Kinzler received the deficiency payments, the Purdys were under a court order to pay any rent received over to the clerk of the court, and the Purdys preferred to let Kinzler keep the payments than to let plaintiff receive them under its lien on the rents. The language of the relevant provision is not susceptible to defendants' argument, nor was a finding by the trial court that no such oral precondition existed against the manifest weight of the evidence. 119 Ill. App. 3d at 400, 457 N.E.2d at 73 (existence of oral contract is a question of fact).

The expert testimony concerning the 1984 Federal Feed Grain Program shows that the Purdys as landlords under a lease of the type with Kinzler were not entitled to participate in the program. The existence of the alleged precondition would have rendered that portion of the rents provision valueless. Don Hettel, charged with administering the program in the county in which a portion of the Purdys' farm was located, testified that Robert Purdy had signed up for the program but came in and had defendant, Kinzler, and his partner, Davis, substituted for him because of the lease agreement. The officer testified that the landlord under such a lease was not an operator of the farm so as to be entitled to receive payments under the program. It

appears both the Purdys and Kinzler knew, and the court could have found, that the Purdys as landlords could not participate in the program directly in light of the lease agreement. Such a finding supports the trial court's interpretation of the rents provision and is not against the manifest weight of the evidence. It is undisputed that the tenant Kinzler did place the farms in the program and did receive $40,315.60 in deficiency payments under the program. The trial court properly found that $20,157.80, representing one-half of Kinzler's deficiency payments, were still owed as rent under the lease.

Plaintiff argues in its cross-appeal that the trial court erred in failing to find that the term "tenant" included Jerry Davis, Kinzler's partner, in the farming operation conducted on the farms leased from the Purdys. As a result, plaintiff argues that it is entitled to one-half of the payments Jerry Davis received as an operator of the Purdys' farms under the program. The expert testimony concerning the Federal Feed Grain Program shows that the right to receive payments is based on whether the person seeking to participate is an "operator" or "producer" within the guidelines of the program. This operator or producer status is not dependent upon whether a person is a tenant or co-lessee but on whether he bears the costs or risks of production. The trial court correctly concluded that the fact Jerry Davis received payments under the program does not necessarily imply Davis was a tenant under the lease signed by his alleged partner Kinzler.

■■ There is evidence of partnership between Kinzler and Davis. However, even assuming such a partnership, the lease on its face does not indicate Kinzler signed in a partnership capacity. Kinzler may have had such authority, but a finding that Kinzler did not sign in a partnership capacity so as to make any alleged partnership, which may have existed at the time, a tenant under the lease, was not against the manifest weight of the evidence. A written partnership agreement does exist as of March 1, 1985, but this agreement does not support plaintiff's contention that on January 31, 1984, when Kinzler signed the lease, the parties intended the partnership of Kinzler and Davis to be the tenant. The testimony of Kinzler as to the existence of a partnership with Davis prior to Kinzler signing the lease does not change our opinion. Kinzler testified to the existence of a written partnership, since destroyed, for the purposes of farming. This evidence does not make it clear, as plaintiff argues, that the terms of the partnership agreement required the partnership to enter a lease. Kinzler and Davis could have been partners, with Kinzler the tenant on the lease, and the partnership of Kinzler and Davis being a two-person operation under the Federal Feed Grain Program. There

is little, if any, evidence as to the terms of the partnership. We fail to see why Kinzler and Davis could not be partners, and only Kinzler liable on the lease. Kinzler and Davis could have agreed to such an allocation of risks. The trial court's finding that Kinzler was the only tenant under the lease with the Purdys was not against the manifest weight of the evidence.

■■ The record further indicates other facts which make it clear the trial court's findings were not against the manifest weight of the evidence. The expert testimony and other evidence established that the fair rental value of farmland like the Purdys' was $110 per acre at the minimum and $180 per acre at the maximum. The Purdys testified they were seeking a reasonable rent from Kinzler when they contracted to lease the farms to him. Purdy testified he felt the value of the rent due from Kinzler in cash and corn was around $130 per acre under the terms of the lease at the time the parties entered into the lease agreement. If defendants' interpretation of the lease were accepted by the trial court, the rent owed by Kinzler would have been valued at approximately $73 per acre. When Robert Purdy was asked what he would think if the value of the rent under the lease with Kinzler was only $73 per acre, he answered "I would be amazed." Seventy-three dollars per acre is considerably less than the $130 per acre Robert Purdy testified was his intention at the time of contracting. The rent per acre under the trial court's construction is approximately $113 per acre. This amount is within the range of fair rental values adduced at the trial. In addition, as the trial court noted, plaintiff alleged fraud on the part of defendants in the making of the lease to the detriment of plaintiff. The trial court was faced with two conflicting interpretations, one of which the court felt would have required it to address the allegations of fraud; the other one, the one adopted by the court, led to an interpretation which avoided the implication of bad faith or fraud on the part of defendants in entering the lease. The trial court correctly adopted the interpretation which avoided imputing bad faith on the part of defendants. (See *De Witt County Public Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 18, 469 N.E.2d 689, 695 (where an instrument is susceptible to two conflicting constructions, one of which imputes bad faith and one which does not, the latter construction should be adopted).) The trial court's findings and interpretation of the disputed lease based on the extrinsic evidence adduced at trial, and on an interpretation of the contract as a whole as well as the intentions of the parties, were not against the manifest weight of the evidence.

Defendants, Purdys, argue on appeal that the judgment of the

trial court's finding Purdys liable for the additional rent due under the lease from their tenant, Kinzler, was in error. Defendants argue that no facts were pleaded or proved to support the granting of such relief. Defendants' argument is based on incomplete references to the complaint, no citation to authority, and a conclusional statement that "no facts were pled which justifies a money judgment against the Purdys, and no facts were proved at trial." Defendants' argument is without merit. To be sufficient, a complaint must state a cause of action in two ways: (1) it must set forth a legally recognized claim as its avenue of recovery; and (2) it must plead sufficient facts to support recovery within the legally recognized cause of action alleged. (*Shaw v. Ortell* (1984), 137 Ill. App. 3d 60, 66, 484 N.E.2d 780, 785.) A pleading giving enough information to indicate a ground for liability is sufficient to support a judgment. *Parrino v. Landon* (1956), 8 Ill. 2d 468, 473, 134 N.E.2d 311, 314.

In the instant case, plaintiff's third amended complaint alleged that the Purdys breached their implied covenant of good faith under the loan and trust deed agreements with the plaintiff. Plaintiff also alleged the Purdys breached their implied covenant not to impair the security granted under the trust deed by interfering with the collection of rents which the Purdys assigned to the Bank under the trust deed. Both of these allegations are legally recognized grounds for relief. (*Borys v. Josada Builders, Inc.* (1982), 110 Ill. App. 3d 29, 33, 441 N.E.2d 1263, 1266 (it is well established that every contract contains an implied promise of good faith and fair dealing between the contracting parties); *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 441, 464 N.E.2d 651, 657 (it has long been established that a mortgagor has no right to do any act which would impair the security of the mortgage).) The complaint alleged the existence of the trust deed, and the lease with Kinzler and the facts that rent was not being collected by Purdy from Kinzler with respect to the in-kind payment of corn and the uncollected deficiency payments received by Kinzler under the Federal Feed Grain Program. The Purdys did not collect the rent owed by Kinzler under the lease at the time when the Purdys knew any rent received would be sequestered by the court under its October 26, 1984, order. The Purdys were well aware of plaintiff's rights to such rents under the trust deed. The pleadings and the record clearly support the trial court's judgment that the Purdys are liable to plaintiff for the rent still owed under the lease, by their tenant Kinzler, for the Purdys' failure to collect the rent from Kinzler. Nor is the trial court's refusal to grant judgment on the allegations of fraud inconsistent with the judgment rendered. The trial court ex-

pressly construed the lease to avoid an implication of fraud on the part of the Purdys in entering the lease. However, this does not require a conclusion that the Purdys acted in good faith with respect to their duties under the trust agreement with the Bank. The trial court did not err in its judgment finding the Purdys liable for the rent still owed by Kinzler under the lease.

■ Defendants' next issue concerns the trial court's award of statutory prejudgment interest on the additional amount of rent owed under the lease. The relevant statute provides in part:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; ***." (Ill. Rev. Stat. 1985, ch. 17, par. 6402.)

The trial court's award of prejudgment interest was proper under this provision. For interest to attach, prior to judgment, absent an agreement, the amount must be fixed or determinable, and due by virtue of a written agreement. (*Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 251, 323 N.E.2d 73, 83.) If the amount is determinable, interest can be awarded or money payable even when the claimed right and amount due require legal ascertainment, and the fact parties could reasonably differ as to their liability is not a consideration under the statute. (25 Ill. App. 3d at 251, 323 N.E.2d at 83.) A determination of whether prejudgment interest is owed will not be reversed unless contrary to the manifest weight of the evidence. *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 558, 437 N.E.2d 872, 883.

In the instant case, the trust deed, promissory notes and lease were all instruments in writing. Under the terms of the trust deed and accompanying promissory notes, plaintiff had a right to receive the rents of the lease which plaintiff perfected by the court order of October 26, 1984. The Purdys' loans were due and in default on February 1, 1984. Kinzler's disputed rent was due, by the terms of the lease, after plaintiff perfected its lien. Hence, plaintiff was owed the rent payments from Kinzler. These amounts were easily ascertainable. The amount of overcharges by Kinzler was determinable on February 22, 1984, when the Purdys deposited the proceeds of the sale of corn along with an accounting of all the costs. The rent representing one-half of the deficiency payments received by Kinzler was due upon receipt by Kinzler. This amount was determined at the same time it was received, which was April 9, 1985. The trial court's award of prejudgment interest was not against the manifest weight of the evidence and is affirmed.

■ The last issue on appeal is raised by defendant Kinzler, who

argues plaintiff's recovery against him is barred by *laches*. The authority relied on by defendant fails to support his argument. In fact, defendant's authority makes it clear that the equitable defense of *laches* is not available to this defendant. While the facts that constitute *laches* are to be determined under the circumstances of each case, it has been held that certain facts must be disclosed, including a lack of knowledge or notice on the part of the defendant that the plaintiff would assert the right upon which he bases his suit. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344.) Where a plaintiff is not guilty of any affirmative acts of deception to prevent suspicion or inquiry, matters which are of public record serve as constructive notice to the defendant. (12 Ill. 2d at 554, 147 N.E.2d at 345.) In the instant case, the trust deed under which plaintiff asserted its rights to the rents Kinzler owed was recorded on March 16, 1983. Kinzler did not enter the lease agreement until January 31, 1984. The trust deed was a matter of public record for over 10 months before Kinzler signed his lease. (*Ready v. Ready* (1939), 300 Ill. App. 42, 53, 20 N.E.2d 636, 641.) Kinzler had constructive notice of plaintiff's rights. In addition, Kinzler received a letter from plaintiff on February 17, 1984, giving him actual notice of plaintiff's prior interest and its intent to take necessary action. A reviewing court will not interfere with the trial court's determination of the applicability of *laches* absent an abuse of discretion. (*Dennis v. Hite* (1961), 28 Ill. App. 2d 429, 433-34, 172 N.E.2d 36, 38.) Under the circumstances, the trial court did not abuse its discretion in refusing to apply the doctrine of *laches*.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.