**HARRIS TRUST AND SAVINGS BANK, Plaintiff,**

v.

**Wayne J. KLEIN, Klein Corporation, Ilene F. Goldstein, Trustee of the Estate of Wayne J. Klein, and United States Fidelity and Guaranty Company, Defendants.**

Nos. 88 C 4811, 88 C 4812.

United States District Court, N.D. Illinois, E.D.

May 12, 1989.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On February 27, 1989, this court reversed a ruling of the bankruptcy court granting summary judgment to Harris Bank. The bankruptcy court had ruled that Harris Bank could retain possession of certain collateral pledged by Klein pursuant to a security agreement and subsequent promissory notes because cross-collateralization provisions in the notes unambiguously secured previous debts of Klein to the bank. 97 B.R. 394. This court, however, determined that the bankruptcy judge should have looked to extrinsic evidence before determining whether the cross-collateralization clauses were unambiguous on this score.

Harris Bank has moved this court to reconsider that ruling. It first argues that the court erred in finding ambiguity in the cross-collateralization provisions. It then argues that, even if this court did not so err, the court should have upheld the bankruptcy court's ruling on an issue not reached by that court.

With respect to the first position, the court notes that Harris Bank has provided no new case law to support its motion, and takes issue not with this court's legal conclusions, but rather with the court's application of those conclusions to the facts of this case. With that in mind, the court turns to Harris Bank's arguments.[1]

Harris Bank disputes the ruling that the March 19 note is ambiguous with regard to the obligations it secures, and that, accordingly, the June 19 note, which contains the same language as the March 19 note, is ambiguous as well. Harris Bank agrees that the March 19 note's cross-collateralization clause arguably secured only the March 19 loan. It also agrees that if the March 19 note is ambiguous, then the June 19 note is also ambiguous. The bank, however, insists that the March 19 note is not ambiguous.

Harris Bank contends that these three positions are not contradictory because any ambiguity lies not in the note itself, but in the fact that it came one week after Klein and the bank entered into a Security Agreement (and side letter) which specifically referenced the later note. According to Harris Bank, the March 12 agreement and the March 19 note arguably constitute a single integrated agreement. The former states that the collateral secures only the March 19 loan. The latter says that the collateral secures all prior loans as well. Reading them together, Harris Bank posits, creates an ambiguity as to what the collateral secured, but this does not mean that the March 19 note on its own is ambiguous; since the Security Agreement terminated before the June 19 note issued,[2] the ambiguity the agreement creates when read together with the March 19 note does not arise when interpreting the June 19 note. This reasoning, however, ignores this court's legal ruling that, under Illinois law, even facially unambiguous notes may be found to be ambiguous in light of extrinsic evidence.[3]

The March 19 note's cross-collateralization clause provided that Klein was granting Harris Bank a security interest in any collateral within its possession "[t]o secure the payment of this and any and all other liabilities of the undersigned or any of them to [Harris Bank], whether now existing or hereafter arising and howsoever evidenced or acquired." On its face, this clause certainly suggests that the collateral would secure Klein's prior obligations. It may not, however, have had this meaning, for just one week earlier the parties entered into a Security Agreement which specifically anticipated a future loan and indicated that the agreement's collateral would secure only this and other future loans. Perhaps that is what the parties meant by employing the phrase "now existing or hereafter arising" in the March 19 note, however inartful this wording may have been. *See DeKalb Bank v. Purdy*, 166 Ill.App.3d 709, 719, 117 Ill.Dec. 606, 520 N.E.2d 957 (1988). And if it is, they may well have intended the same meaning for the June 19 note—a question only the trier of fact can resolve.

---

1. This court set forth the relevant facts and legal rulings in its February 27 ruling, and will not repeat them here.

2. Harris Bank also takes issue with this court's ruling that the Security Agreement may not have terminated when Klein satisfied the March 19 note. The court predicated this ruling on the Security Agreement's termination provision, which provided that the agreement would "continue in effect ... until ... the Bank has received written notice of its termination from the Debtor," and on the absence in the record of any such written notice. Harris Bank, however, insists that the side letter modified the termination provision by providing that the agreement would terminate when Klein repaid the March 19 loan.

For the purposes of this ruling, the court will assume that Harris Bank is correct, and that the Security Agreement thus terminated on May 5. On remand, however, the bankruptcy court should decide whether the side letter modified the termination provision, and if it did not, the effect of the Security Agreement (with its side letter) on the meaning of the June 19 note.

3. In its ruling, this court discussed a recent Seventh Circuit case which noted an apparent conflict in the Illinois courts over the proper use of extrinsic evidence in contract interpretation. The ruling, however, inadvertently omits the Seventh Circuit citation. The case is *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331 (7th Cir.1988), and belongs at the end of the last full paragraph on p. 6.

Harris Bank complains that the appellants (and the court) are stretching to give the June 19 note a meaning it does not have. But the bank forgets that it chose to employ the dragnet clause in the notes, and thereby left itself open to a finding of ambiguity. If, as the bank insists, the parties intended to cross-collateralize Klein's prior obligations, then the bank could have delineated these obligations in the June 19 note. Without such specificity, however, and given the circumstances preceding the June 19 loan, Harris Bank will have to defend its interpretation of the note before a fact-finder.

Harris Bank's alternative ground for upholding the bankruptcy court's ruling has never made much sense to the court, and still does not. According to Harris Bank, Klein defaulted under the side letter, and thereby forfeited his interest in the collateral, when he breached the mortgage he had granted to Harris Bank on certain Colorado property. Yet, assuming arguendo that Klein breached the mortgage, this court fails to perceive how this breach impacts on the Security Agreement. The side letter stated that Harris Bank would return Klein's collateral "when all loans made by Harris Bank to [Klein] within the next week are paid in full and without default." The mortgage did not involve a loan within the relevant time frame, and therefore does not fall within the terms of the side letter. Thus, as far as this court can tell, any breach of the mortgage has no bearing on Klein's right to receive his collateral. If there is more to Harris Bank's argument than meets the eye, the bank may present it to the bankruptcy court on remand.

### CONCLUSION

Harris Bank's motion to reconsider is denied.