**MDFC LOAN CORPORATION,
a Delaware corporation,
Plaintiff,**

**v.**

**LaSALLE NATIONAL BANK, as Trustee under Trust Agreement dated June 1, 1981 and known as Trust No. 104048, et al., Defendants.**

**No. 92 C 4876.**

United States District Court,
N.D. Illinois, E.D.

Sept. 29, 1993.

Raymond E. Stachnik, and Glenn Collins of Katten, Muchin & Zavis, Chicago, IL, for plaintiff MDFC Loan Corp.

Kevin M. Flynn, Shelley Rice Weinberg, and William T. McCartan of Coffield, Ungaretti & Harris, Chicago, IL, for defendant LaSalle Nat. Bank.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

On July 27, 1993, MDFC Loan Corporation filed suit against LaSalle National Bank and others to foreclose a Mortgage and Security Agreement against the office building located at 320 North Michigan Avenue in Chicago. MDFC's verified motion for appointment of a receiver accompanied the complaint. Pursuant to an Agreed Order, this court appointed a receiver on August 7, 1992. The defendants now move this court for a turnover of rents which came due prior to August 7, 1992, but which were paid after that date and collected by the receiver. LaSalle argues that MDFC is entitled only to rents that came due after the receiver's appointment; MDFC claims entitlement to all rents collected by the receiver.

Illinois law governs this dispute, but the precedents cited by both parties offer little guidance. The cases do not specifically address the disposition of rents in arrears at the time of a receiver's appointment, and their statements of the general rule entitling a mortgagee to rents and profits can be variously parsed and interpreted to produce different answers to the question at hand. *See, for example, DeKalb Bank v. Purdy*, 166 Ill.App.3d 709, 117 Ill.Dec. 606, 610, 520 N.E.2d 957, 961 (2d Dist.1988) ("the mortgagee is not entitled to rents until he actually takes possession or until possession is taken on his behalf by a receiver"); *Anna National Bank v. Prater*, 154 Ill.App.3d 6, 107 Ill.Dec. 26, 36, 506 N.E.2d 769, 779 (5th Dist.1987) ("A mortgagor in possession ... has the right ... to collect any rents due under the lease prior to foreclosure and entry into possession by the mortgagee.").[1] Some older cases state the rule in terms of accrual. *See, e.g., Taylor v. Osman*, 239 Ill.App. 569, 574 (2d Dist.1926), quoting Jones on Mortgages § 670 (5th ed.) ("Although a mortgagee may have the right to take possession, upon a breach of condition, if he does not exercise that right, he cannot claim the profits.... [If he does, he] is confined to the rents and profits accruing during the pendency of the suit."); *Anderson v. Frederickson*, 252 Ill. App. 281, 285 (1st Dist.1929) (same). But since these cases also do not expressly address the disposition of payable but unpaid rents, they offer little insight into how the state courts would have answered the question presented here.[2]

In the absence of clear guidance from the Illinois courts, rather than relying on a broadly formulated rule, the best course seems to lie in looking for the most equitable result in harmony with Illinois law and based on the most specific grounds.

■ First, where the security agreement entitles the mortgagee to rents and profits, I can see no reason in equity why the defendants should take rents which the mortgaged property generated after default, while MDFC is left to bite the bullet on the debt. The mortgagee seems no less deserving of rents past due at the receiver's appointment than those that mature later. "Being in default upon the obligation which his mortgage secures, the debtor who quarrels over this point is met by the answer, 'Well, if you pay

---

1. The ambiguity here lies in determining whether "prior to foreclosure" modifies "due under the lease" or "collect any rents."

2. *In re Clark Realty Co.*, 234 F. 576 (7th Cir.1916) illustrates why reliance on cases not directly addressing the issue at hand would be misplaced. The Seventh Circuit quoted the rule on a mortgagee's entitlement to rents as follows: "the mortgagor is entitled to rents and profits accrued up to the time that the mortgagee enters." *Id.* at 582, quoting *In re Chase*, 133 F. 79, 81 (D.Mass.

1904). In support of this statement, which might appear to favor the defendant's position in this case, the court cited, among other cases, two from the New York Court of Appeals, both stating that the mortgagee is entitled to rents unpaid at the time a receiver is appointed. *Id.*, citing *Wyckoff v. Scofield*, 98 N.Y. 475, 478 (1885), and *Rider v. Bagley*, 84 N.Y. 461 (1881). Note also that "accrue" might mean chargeable, but not yet payable; payable, but not paid; or received. See Black's Law Dictionary (West, 6th ed., 1990).

up, of course you can have the rent. But since you refuse to do that, you are not in a position to demand the rent." 1 Garrard Glenn, *Mortgages, Deeds of Trust, and Other Security Devices as to Land* § 181 at 944 (Michie, 1943). *See also* George E. Osborne, *Handbook on the Law of Mortgages* § 152 at 379 & n. 57 (West, 1951) (quoting Prof. Glenn).

Furthermore, entitling the mortgagee to overdue rents collected by the receiver harmonizes with Illinois' rule that "a provision in the mortgage agreement giving the mortgagee a lien on rents and profits does not vest such rents and profits in the mortgagee without action on the mortgagee's part." *DeKalb Bank*, 117 Ill.Dec. at 610, 520 N.E.2d at 961. This rule encourages the mortgagee to act quickly in seeking the appointment of a receiver and the preservation of rents and profits, thereby avoiding problems attending the uncertain disposition of funds coming into the mortgagor's hands and conserving judicial resources by leaving receipts with the party who made collection. A rule entitling the mortgagee to overdue rents actually collected by the receiver is entirely consistent with these goals.

Other jurisdictions have recognized the mortgagee's right to overdue rent, although contrary authority exists. *See New York Life Ins. Co. v. Fulton Development Corp.*, 265 N.Y. 348, 351, 193 N.E. 169, 171 (1934) ("An owner of property is entitled to the rents until there is a default under the mortgage; then the mortgagee has an equitable claim to the rents that are unpaid."); *S & H Building Materials Corp. v. European–American Bank & Trust Co.*, 104 Misc.2d 249, 253, 428 N.Y.S.2d 140, 143 (Sup.Ct., Suffolk County 1980) (same); *White v. Anthony Inv. Co.*, 119 Fla. 108, 160 So. 881 (1935); *King v. Housatonic Railway*, 45 Conn. 226, 234 (1877) ("[the mortgagee] becomes entitled to all rents accruing after the execution of the mortgage and in arrear and unpaid at the time of the notice, as well as those which accrue afterwards"). *Cf. Watts' Adm'r v. Smith*, 250 Ky 617, 63 S.W.2d 796 (1933). *But see New Order Building & Loan Association v. 222 Chancellor Avenue*, 106 N.J.Eq. 1, 149 A. 525 (1930); *Mortgage Guarantee Co. v. Sampsell*, 51 Cal.App.2d 180, 124 P.2d 353 (1942); *Hyde v. Brandler*, 118 A.2d 398 (D.C.Municipal Ct.App.1955).

Nevertheless, a broad rule that awards the mortgagee rents due but not paid at the time a receiver is appointed seems flawed, because it makes the rights of the two parties turn on the action of a third—the lessee. That may invite fraudulent collusion between a mortgagee and a tenant. It also provides an opportunity for vindictive withholding of rent from a landlord whom the tenant dislikes and knows has fallen on hard times. While such collusive schemes and vindictive conduct may expose participants to liability for fraud, tortious interference with contract, and tortious breach, proof problems in these cases could leave damaged parties without effective remedies.

But the resolution of this case does not depend on adopting such a broad rule. Here, there has been no allegation that collusion or malice caused the rents at issue to be paid late. The mortgagor has offered no evidence that tenants who regularly paid on time suddenly paid late in coincidence with the bankruptcy proceeding. Nor is there a clear opportunity for well-concealed collusion between the mortgagee and the tenants, as might exist if the property had only a few tenants, or if one paid a dominant proportion of the total rent. The office building in this case contained 64 rental units, of which 45 were occupied as of January, 1993. Even without direct evidence of collusion or malicious intent, a broad rule awarding unpaid rents to the mortgagee might insufficiently guard against fraud under these circumstances.

Finally, the rents at issue have actually been collected by the receiver. This ruling does not address the situation where a tenant has paid overdue rent to the mortgagor.

The defendants' motion for turnover of rents due prior to appointment of the receiver, but collected by the receiver after his appointment, is denied.