In re Viola REEVES, Debtor.

No. 85 C 1291.

United States District Court,
N.D. Illinois, E.D.

Oct. 7, 1986.

Steven J. Sensibar, Lawrence Friedman, Chicago, Ill., for creditor-appellant Security Pacific Finance Corp.

Joan S. Slezak, Lawrence W. Korrub & Associates, Chicago, Ill., for debtor-appellee Viola Reeves.

### MEMORANDUM AND ORDER

MORAN, District Judge.

This case is before the court on the appeal of Security Pacific Finance Corporation ("Security Pacific") from a bankruptcy court order confirming the Chapter 13 repayment plan submitted by Viola Reeves ("repayment plan"). Security Pacific objected that the repayment plan modified its rights in violation of 11 U.S.C. § 1322(b)(2). On January 17, 1986, this court affirmed the confirmation order. Security Pacific now moves for reconsideration. For the following reasons, the motion for reconsideration is denied.

#### Facts

Viola Reeves filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on October 17, 1984. Security Pacific is one of Ms. Reeves' credi-

tors, holding a claim of approximately $6,336 secured by a second mortgage on her residence. The claim represents the balance owed on a "retail installment contract" executed by Ms. Reeves in 1979. Under the contract certain improvements were made to Ms. Reeves' home, including work on the roof, gutters, walls and porch. The contract called for $11,000 of the purchase price to be financed at an annual rate of 16 per cent. The money was to be repaid in 84 monthly installments of $218.48 each, for a total of $18,352.32.

The Chapter 13 statement filed by Ms. Reeves shows that she has a monthly income of $562 and monthly expenses of $362. Her repayment plan proposes that she pay all of her secured and unsecured creditors in full by making 60 monthly payments of $200 each. Under the plan, Security Pacific would get all the money due it under the retail installment contract, including interest at the contract rate. However, each installment would be reduced by approximately $38 and the payments would be extended approximately five more months.

Security Pacific objected to the confirmation of the repayment plan, arguing that these modifications were impermissible under 11 U.S.C. § 1322(b)(2). The bankruptcy judge confirmed the plan over this objection on January 20, 1984, and Security Pacific instituted this appeal.

### Discussion

Under Chapter 13 a debtor's repayment plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2). Secured creditors who are not within the exception for holders of claims "secured only by a security interest in real property that is the debtor's principal residence" (the "§ 1322(b)(2) exception") may be forced to accept certain modifications of their rights under the "cram down" provision of Chapter 13, 11 U.S.C. § 1325(a)(5)(B). The issue on this appeal is whether or not Security Pacific, as the holder of a second mortgage on Ms. Reeves' home, falls within the § 1322(b)(2) exception.

Congress apparently intended the § 1322(b)(2) exception to protect institutional lenders engaged in home mortgage financing. *See, e.g., In re Glenn,* 760 F.2d 1428, 1433–34 & n. 1 (6th Cir.), *cert. denied,* 474 U.S. ——, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). The House version of the Bankruptcy Reform Act of 1978 would have allowed a Chapter 13 repayment plan to modify the rights of all secured creditors. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 429, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6384. An exception for "claims wholly secured by real estate mortgages" was added to the Senate version of the Act after representatives of mortgage lenders warned that Chapter 13 might have the unintended effect of restricting the flow of home mortgage money.[1]

The legislative history provides little insight as to why the Senate version of the § 1322(b)(2) exception was changed in the final bill.[2] However, the court in *In re Glenn* explains that

the preferred status granted some creditors under section 1322(b)(2) was limited to holders of claims secured *only* by a

---

1. *See In re Glenn,* 760 F.2d at 1433–34 & n. 1; Bankruptcy Reform Act of 1978: Hearings on S. 2266 and H.R. 8200 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 95th Cong., 1st Sess., at 273, 707, 714–15, *reprinted in* 14 and 15, Bankruptcy Reform Act of 1978: A Legislative History. Doc. 47A (R. Resnick and E. Wypyski eds. 1979); S. Rep. No. 989, 95th Cong., 2d Sess. 141, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5927.

2. 124 Cong.Rec. S 17,424 (1978) (remarks of Sen. DeConcini); 124 Cong.Rec. H 106–07 (1978) (remarks of Rep. Edwards):

    Section 1322(b)(2) represents a compromise agreement between similar provisions in the House bill and the Senate amendment. Under the House amendment, the plan may modify the right of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence.

security interest in the debtor's principal residence. No preferential treatment was given debts secured by property in addition to the debtor's principal residence. Such debts normally are incurred to make consumer purchases unrelated to the home or to enable the debtor to engage in some form of business adventure. In such circumstances the home is mortgaged not for its own sake but for other purposes, and often is only one of several forms of security given. In a consumer transaction the creditor may also take a security interest in the goods purchased, or in a business transaction, the value of the home may be an insufficient security and, therefore, form only a part of the security package. Congress granted no extra protection for the holders of these types of secured claims, presumably because any impact the bankruptcy laws might have upon them would not seriously affect the money market for home construction or purchase.

760 F.2d at 1434 (emphasis in original).[3] Thus the § 1322(b)(2) exception has been interpreted very narrowly where the secured creditor does not hold a purchase money mortgage on the debtor's principal residence.[4] If a claim is secured by any property other than "real property that is the debtor's primary residence," the claim may be modified by a Chapter 13 repayment plan, even though the debtor's residence may form a portion of the security.

3. Another commentator concludes that the change from "mortgages on real property" to "security interest in real property that is the debtor's principal residence" suggests that Congress intended to limit the benefits of the § 1322(b)(2) exception to residential financiers, rather than permitting its more general use by real property mortgagees, and that the change from "wholly" to "only" was made so that a creditor would not lose the benefits of the § 1322(b)(2) exception if they lost their wholly secured status because of declining property values. See Comment, *Curing Mortgage Defaults Under Chapter 13 of the Bankruptcy Code,* 1982 Ann.Surv.Bankr.L. 493, 495–96.

4. Some courts have stated that the § 1322(b)(2) exception does not apply at all outside the context of long-term purchase money residential mortgages. *See, e.g., In re Morphis,* 30 Bankr.

*See, e.g., In re Leazier,* 55 B.R. 870, 871 (Bankr.N.D.Ind.1985) (claim secured by debtor's residence and 80 acre farm was modifiable); *In re Morphis,* 30 B.R. 589, 594 (Bankr.N.D.Ala.1983) (claim secured by debtor's residence and adjoining vacant lot was modifiable); *In re Oliver,* No. 81 C 1126 (N.D.Ill. July 13, 1981) (claim secured by debtor's residence, wages and household goods was modifiable); *In re Brantley,* 6 B.R. 178, 189–90 (N.D.Fla.1980) (claim secured by debtor's principal residence and an assignment of a life insurance policy was modifiable); 5 L. King, *Collier on Bankruptcy,* ¶ 1322.06[1][a], at 1322–13 (15th ed. 1986) ("A claim secured by any other real property or by personal property of the estate, or by property of another may be modified by a Chapter 13 plan.").

There is no reason to depart from this strict reading of the § 1322(b)(2) exception in this case. "A loan for the purpose of home improvement is not the long term mortgage financing which Congress sought to protect in enacting section 1322(b)(2)." *In re Lyons,* 46 B.R. 604, 606 (Bankr.N.D. Ill.1985). Thus, whether Security Pacific's rights may be modified by Ms. Reeves' repayment plan depends entirely on the nature and extent of the security interest it holds.

As both sides have selectively edited the provisions of the retail installment contract that created Security Pacific's security interest, they are reproduced in full below.[5]

589, 592–93 (N.D.Ala.1983). However, the language of § 1322(b)(2) is not that strict. *See In re Bradshaw,* 56 Bankr. 742 (S.D.Ohio 1985); *In re Coffey,* 52 B.R. 54 (Bankr.N.H.1985).

5. Paragraph 3 of the retail installment contract states:

To secure all present and future obligations of Buyer under the Contract, Seller shall have a security interest, under the Uniform Commercial Code or other applicable law, in the above-described goods and all accessories, parts and other property now or hereafter at any time owned by Buyer and installed therein or affixed thereto (herein collectively called the "Goods") and all proceeds thereof; and ... all present and future obligations of Buyer under this contract shall be secured by a Trust Deed (Mortgage) on the real property located

Ms. Reeves focuses on language creating a security interest in "other property now or hereafter at any time owned by Buyer...." She also relies on language providing that "any proceeds of disposition of the Goods after repossession thereof by the Seller may first be applied by Seller to the payment of expenses...." She contends that this language creates a security interest in property other than "real property that is her principal residence," so that the § 1322(b)(2) exception does not apply. Therefore, Ms. Reeves maintains that her Chapter 13 plan was properly confirmed.

Security Pacific claims that the language giving it a security interest "in the above-described goods and all accessories, parts and other property now or hereafter at any time owned by Buyer and installed therein or affixed thereto ... and all proceeds thereof" creates a security interest in fixtures. Security Pacific maintains that because fixtures become part of the real estate, that it has a security interest only in Ms. Reeves' real property and confirmation of Ms. Reeves' repayment plan over its objection violated 11 U.S.C. § 1322(b)(2).

Although the issue is a close one, the court agrees with Ms. Reeves. Assuming that the retail installment agreement creates a security interest in fixtures, it does not necessarily follow that fixtures are real property. Under Article 9 of the Uniform Commercial Code

> goods are "fixtures" when they become so related to particular real estate that an interest in them arises under real estate law.

U.C.C. § 9–313(1)(a), Ill.Rev.Stat. ch. 26, ¶ 9–313(1)(a). It is true that title to fixtures may pass in a deed, and an interest in fixtures may be created in a mortgage. *See* U.C.C. § 9–313(3). Indeed, the trust deed mortgage in this case conveys to Security Pacific an interest in Ms. Reeves' real property "together with all improvements, tenements, easements, fixtures and appurtenances...."

But fixtures retain a separate status as personal property. *See* J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* § 25–8, at 1054–56 (2d ed. 1980); U.C.C. § 9–313 comment 3. The retail installment contract itself acknowledges that separate status by providing for repossession and disposition of the goods installed as fixtures. *Cf. Landfield Finance Co. v. Feinerman*, 3 Ill.App.3d 487, 490, 279 N.E.2d 30, 33 (1st Dist.1972) ("The once inflexible rule that when personal property is attached by some permanent method to the realty has been replaced in Illinois by a more liberal doctrine holding that the property remains personalty where such intent can be gathered from the conduct or action of the parties.")

More importantly, Article 9 of the Uniform Commercial Code recognizes the personal property status retained by fixtures by establishing priorities for security interests in fixtures under Article 9 and conflicting security interests arising under real estate mortgages. U.C.C. § 9–313. Under certain circumstances the Article 9 security interest prevails and the creditor may remove the fixtures from the real estate. U.C.C. § 9–313(8).

■ The court reads the retail installment contract as creating two different security interests: one attaching only to fixtures under Article 9, and the other attaching to "real property that is the debtor's principal residence," including fixtures, under the trust deed mortgage and real estate law. While the latter security interest falls within the § 1322(b)(2) exception, the former does not. By creating both, Security Pacific loses the benefit of the § 1322(b)(2) exception.

at the Job Address. To further secure such obligations, Seller shall have the right of set-off against any deposits or other sums which may now or in the future be owing by Seller to Buyer. In addition, Seller and anyone else furnishing any material, fixtures, apparatus, machinery, labor or services in connection with this contract may have a lien, under Illinois Revised Statutes, Chapter 82, §§ 1–39 or any other similar statute or rule of law, upon the real property located at the Job Address.

Neither the terms of § 1322(b)(2) nor the underlying policy support granting Security Pacific a preferred status among Ms. Reeves' secured creditors. The bankruptcy judge properly confirmed her Chapter 13 repayment plan.

### Conclusion

For the foregoing reasons, the motion for reconsideration is denied. This court's order of January 17, 1986 affirming the bankruptcy judge's denial of Security Pacific's objection to confirmation stands.