**In re Andrew J. HEMSING, Sharon K. Hemsing, Debtors.**

**Bankruptcy No. 87–40058.**

United States Bankruptcy Court,
D. Montana.

July 17, 1987.

Jerrold L. Nye, Billings, Mont., for debtor.

Sherry Scheel Matteucci, Billings, Mont., for First Interstate Bank.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

The issue before this Court is whether in a Chapter 13 bankruptcy a matured indebtedness secured by a second mortgage on the Debtors' principal residence is subject to "modification" under 11 U.S.C. § 1322(b)(2).

On April 8, 1985, First Interstate Bank of West Billings (hereafter "First Interstate") advanced $17,425.00 with interest of 16.75% per annum to Andrew J. Hemsing and Sharon K. Hemsing (hereafter "Debt-

ors"). The funds were advanced to assist the Debtors with the balloon payment due on their first mortgage. The Debtors signed a six-month note with a maturity date of October 8, 1985. Doris B. Purnell also signed the note as guarantor. As security for the indebtedness, First Interstate took a second mortgage on the Debtors' principal residence, which mortgage is second to that of Security Federal Savings and Loan Association of Billings.

Debtors were unable to pay the balance of the debt on the original maturity date of October 8, 1985. First Interstate agreed to extend the maturity date to April 8, 1986. Debtors again were unable to pay the debt on the extended maturity date. First Interstate, on July 2, 1986, extended the maturity date to January 1, 1987, at which time the Debtors again failed to pay the debt.

Debtors filed a Chapter 7 petition on January 30, 1987. The case was converted to a Chapter 13 proceeding upon motion of Debtors by Order of this Court on March 13, 1987. The Debtors' Plan lists First Interstate as a partially secured and partially unsecured creditor. That fact is not in dispute. On this basis the Debtors seek to modify the terms of the debt owed to First Interstate by payment of the secured portion of the claim and discharge of the unsecured claim.

Section 1322(b)(2) provides, in pertinent part, that "... the plan may modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence....*" (Emphasis supplied).

This decision of the Court is governed in part by *Seidel v. Larson (In re Seidel)*, 752 F.2d 1382 (9th Cir.1985), since *Seidel* and the case *sub-judice* involve a home mortgage which matured by its terms prior to filing of the petition.

In *Seidel,* the debtors purchased a home, giving a promissory note secured by a mortgage, which note was due in full three years from date of its execution. On default, foreclosure proceedings were initiated and then stayed when the debtor filed a Chapter 13 petition. The debtor's plan

proposed payment over sixty months but was not confirmed since the delay of payment on an already matured debt involved a "modification" of the debt which is prohibited by § 1322(b)(2). *Id.* at 1383. The facts in the present case mirror those in *Seidel:* (1) the note matured prior to bankruptcy; (2) debtors proposed a delay of payment during the pendency of the plan; and (3) the debt is secured only by an interest in the debtors' home.

The Ninth Circuit Court of Appeals in *Seidel* phrased the issue as to whether a debtor "can use a Chapter 13 petition to delay a payment of an unaccelerated debt that matured prior to the filing of the petition". The *Seidel* court determined that a debtor cannot do so.

"We are compelled by legislative history and the plain meaning of subsection (b)(2) to uphold Congress' intention to protect home mortgage lenders. Although Chapter 13 empowers all other types of debtors to 'cure' their outstanding debts and make payments out of future income, in the specific context of home mortgage debts, the final amendments to subsection (b)(2) unequivocally favor the creditor." *Id.* at 1387.

■ The Debtors in the present case contend that "[t]he second mortgage of First Interstate was not a fully matured debt at the time of the Chapter 13 filing." Examination of the note signed by the Debtors and the subsequent extension agreements demonstrates exactly the opposite. In fact, the debt matured three times: (1) original maturity date was October 8, 1985; (2) after execution of an extension agreement, maturity date was April 8, 1986; and (3) after another extension, maturity date was January 1, 1987. The Debtors filed their Chapter 7 petition on January 30, 1987. This Court ordered the case converted to Chapter 13 on March 13, 1987. Whether the Court looks to the original maturity date of October 5, 1985, or the extended maturity date of January 1, 1987, the debt to First Interstate was fully "matured", as opposed to "accelerated", prior to the filing of the bankruptcy petition. *Seidel's* holding thus controls as it is squarely on point.

See also *In re Van Gordon,* 69 B.R. 545, 546, 4 Mont. B.R. 63, 64 (Bankr.Mont.1987). The Debtors' plan seeks to modify First Interstate's debt by creating a new payment schedule on a debt already matured. This result is clearly prohibited under 1325(b)(2).

■ The Debtors also assert that the modification prohibition of § 1322(b)(2) does not apply in this case because "[t]he second mortgage to First Interstate was secured not only by Debtors' residence but also by the guaranty of payment by Doris B. Purnell, which is clearly a security in addition to Debtors' principal residence." The argument flows that other security was given for the debt not *"only"* the family residence. As held in *In re Reeves,* 65 B.R. 898 (Bankr.N.D.Ill.1986), a debt secured by both the principal residence and fixtures was subject to modification since 1322(b)(2)'s prohibition must be restricted only to a security interest in the family residence. *Reeves* holds:

"Thus, the § 1322(b)(2) exception has been interpreted very narrowly where the secured creditor does not hold a purchase money mortgage on the debtor's principal residence." *Id.* at 900.

The guaranty of payment is a promise to pay money, and is not "security" within the definition of the Bankruptcy Code since no property, real or personal, is pledged to secure repayment.

A "security interest" is defined in 11 U.S.C. § 101(45) as a "lien created by an agreement". A "lien" is defined in 11 U.S.C. § 101(33) as a "charge against or interest in property to secure payment of a debt or performance of an obligation". The promise of the guarantor is not "property" and thus the guaranty is not other security within the context of the *Reeves* holding. See e.g., *In re Claxton,* 21 B.R. 905 (Bankr.E.D.Va.1982) (decided under former Bankruptcy Act); *Meek v. United States Rubber Co.,* 244 Ark. 359, 425 S.W.2d 323 (1968); *Schulte v. Beneficial Finance of Kansas, Inc.,* 8 B.R. 12, 15 (Bankr.D.Kan.1980) (one having perfected security interest in specific property of debtor has a "lien" which is an interest or

right in property); *Preferred Surfacing, Inc. v. Swinnett Bank & Trust Co.,* 400 F.Supp. 280, 284 (N.D.Ga.1975) ("lien" within Bankruptcy Rule includes any consensual security interest in personal property). All authorities cited by the Debtor, *In re Reeves,* supra; *In re Johnson-Allen,* 67 B.R. 968 (Bankr.S.D.Pa.1986); *In re Lapp,* 66 B.R. 67 (Bankr.Colo.1986); *In re Leazier,* 55 B.R. 870 (Bankr.N.D.Ind.1985); and *In re Brantley,* 6 B.R. 178 (Bankr.N.D. Fla.1980), involve liens on specific tangible property such as fixtures, household goods, farm, or a life insurance policy. The mere promise to pay a debt is not security for the debt since nothing stands behind the promise; there simply is no lien which attaches to a promise. The Debtors' contentions are therefore rejected.

■ Debtors final argument to support the modification of First Interstate's debt is that First Interstate is undersecured in light of the debt owed to the first mortgage holder and therefore is not entitled to protection of § 1322(b)(2). For support, the Debtors' brief cites *In re Cosby,* 33 B.R. 947 (Bankr.E.D.Pa.1983) and *In re Spadel,* 28 B.R. 537 (Bankr.E.D.Pa.1983). The better-reasoned opinions of other courts have held, however, that the protection of § 1322(b)(2) is determined by whether the creditor has a "claim" secured by the principal residence.

*In re Hynson,* 66 B.R. 246 (Bankr.D.N.J. 1986), parallels the issue in this case. In *Hynson,* the debtor proposed to cure the default and maintain the payments on the first mortgage. The second mortgagee was to receive nothing under the plan since the value of the property was exceeded by the first mortgage. *Id.* at 247–248. In the present case, the Debtors propose full payment to the first mortgagee while the second mortgagee, First Interstate, receives but a portion of its indebtedness.

The *Hynson* court recognized the conflict between § 506(a) and § 1322(b)(2) and stated that § 1322(b)(2) must control because of the rule of statutory construction that "regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically

dealt with in another part of the same enactment". *Id.* at 249. As noted in *Hynson,* § 506 is applicable to all cases under Chapters 7, 11, and 13 of the Bankruptcy Code, whereas § 1322(b)(2) applies only to cases under Chapter 13. *Id.,* citing 11 U.S.C. § 103(a) and (h). Other bankruptcy decisions support the *Hynson* court's reasoning. See e.g., *In re Mahaner,* 34 B.R. 308, 309 (Bankr.W.D.N.W.1983) (specific provisions of § 1322(b)(2) supersede the general provisions of § 506 which are inconsistent); *In re Simpkins,* 16 B.R. 956, 963 (Bankr.E.D.Tenn.1982) (specific protection of § 1322(b)(2) prevents application of § 1325(a)(5)(B) "cram-down" provisions).

Focusing on the applicability of § 506 to cases filed under Chapter 13, the *Hynson* court stated:

"To apply the cram-down provisions of 11 U.S.C. § 506 to creditors whose claims are secured solely by the debtor's principal residence, would in large part vitiate the protections of 11 U.S.C. § 1322(b)(2). It would also be at odds with the clear intent of Congress to protect a lender's security when a lender is secured only by a security interest in a Chapter 13 debtor's home." *Id.* at 252.

*Hynson* also repudiated the proposition asserted by the Debtors that, since the second mortgage is undersecured, it is not entitled to § 1322(b)(2) protection and the mortgage can be avoided pursuant to § 506. *Hynson* states:

"The concept that only a 'secured claim' and not an 'unsecured claim' of a mortgagee is protected within the ambit of 11 U.S.C. § 1322(b)(2), carries the syntax of the Bankruptcy Code to an absurd conclusion which is at odds with the general principles of statutory construction and with the clear legislative intent of 11 U.S.C. § 1322(b)(2). This court notes that 11 U.S.C. § 1322(b)(2) protects 'a claim secured only by a security interest in real property that is the debtor's principal residence'. The language of 11 U.S.C. § 1322(b)(2) does not specifically limit its protection to a *secured* claim secured only by a security interest in such real property. As noted by the

court in the case of *In re Simpkins,* the emphasis in determining the applicability of 11 U.S.C. § 1322(b)(2) should be on the existence of a claim, which is a right to payment. 16 B.R. at 963. Certain rights to payment were created by the enactment of 11 U.S.C. § 1322(b)(2), which this court will not disturb by the general application of 11 U.S.C. § 506." *Id.* at 253.

In accord: *In re Ivory,* 32 B.R. 788 (Bankr. Oreg.1983) (Section 1322(b)(2) forbids modification of the rights of a holder of a claim secured only by a security interest in debtor's principal residence).

Regardless of the status of the mortgage as first or second priority, oversecured or undersecured, First Interstate is entitled to the protection of § 1322(b)(2) which prohibits the modification that the Debtors propose in their plan.

IT IS ORDERED the Debtors' Chapter 13 Plan is denied confirmation with leave to amend within ten (10) days.