**In re Lynette JACKSON, Debtor.**

**Bankruptcy No. 91 B 15999.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 22, 1992.

David S. Yen, Legal Assistance Foundation of Chicago, Englewood Office, Chicago, Ill., for debtor.

Barbara Boiko, Shapiro & Kreisman, Deerfield, Ill., for creditor.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Objection to Confirmation and the Motion to Modify the Automatic Stay filed by Independence One Mortgage Company. The Court has jurisdiction over this matter pursuant to Title 28 U.S.C. § 1334 and § 157(b)(2)(L). Briefs were filed by the parties and this matter was taken under advisement by the Court on December 10, 1991. Having fully reviewed the arguments of counsel, the Court hereby finds that the mortgage interest held by Independence One Mortgage Company, is not a "claim secured only by a security interest in real property that is the Debtor's principal residence" within the meaning of § 1322(b)(2) and finds that the terms of the proposed plan do not contain an impermissible modification of Independence One's secured claim. The Objection to Confirmation is therefore overruled and Independence One's motion to modify the stay on those grounds is denied. The following shall constitute the Court's Conclusions of Law pursuant to Bankruptcy Rule 7052.

## ISSUES PRESENTED

The Debtor seeks to pay the 20–month arrearage accrued on her purchase money mortgage through her Chapter 13 plan over a period of 35 months despite the fact that the last scheduled payment under the mortgage will become due within the next four months. The secured creditor, Independence One, has objected to the plan on the grounds that its claim is secured only by an interest in the Debtor's principal residence within the meaning of § 1322, so that the proposed 35–month extension constitutes an impermissible modification of its rights. The Court must therefore determine whether the mortgagee's claim is secured only by a security interest in real property that is the Debtor's principal residence when the purchase money mortgage instrument grants a security interest in the real estate and in fixtures, appurtenances, insurance proceeds and rents derived from the property.

## FACTUAL BACKGROUND

The following facts are assumed by the parties in their submissions to this Court. While no evidence has been presented regarding these facts, the Court accepts such statements as true for the purpose of this Opinion and is basing this ruling on such statements. In the event any party contests the factual record as stated herein, such party may request that the Court set this matter for hearing to prove up the factual record in dispute.

The Debtor filed the instant Chapter 13 proceeding on July 30, 1991. The schedules filed by the Debtor list the real estate at issue (1) as being property solely owned by the Debtor, (2) with a present market value of $15,000, (3) subject to secured claims totaling $34,779 of which some por-

tion is disputed, and (4) claims a $7,500 homestead exemption for the property. The schedules identify Independence One Mortgage Company [hereinafter Independence One] as a secured creditor claiming $7,830.74 under a purchase money mortgage which is the subject of a foreclosure action and which is 20 installments in arrears.

According to the briefs submitted by the parties, the property was purchased by the Debtor's mother and the original purchase money mortgage was granted to the predecessor of Independence One by the mother on March 6, 1972, in the amount of $17,300. This mortgage was thereafter property recorded. The Debtor's mother is now deceased and ownership of the property has passed to the Debtor subject to the mortgage interest of Independence One. The final payment under the terms of that mortgage is due in April 1992. The Debtor, however, has been in default under the Independence One mortgage since November 1989, and is at least 20 months in arrears at this time. A judgment of foreclosure on this mortgage was issued on July 10, 1991, in the amount of $7,830.79, and the Debtor filed the instant Chapter 13 proceeding on July 30, 1991.

The property in question is described in the Debtor's response to the objection to confirmation as a "two-flat building and from time to time the Debtor or her mother have rented out one apartment." It is admitted by all the parties that the Debtor uses the property as her primary residence at this time. It is also stated that the Debtor or her mother "have purchased, installed or brought on to the property in question, apparatus and fixtures such as space heaters, lamps, electric circuit breaker boxes, etc.," and that the Debtor holds property insurance through Independence One or related companies.

The mortgage instrument at issue grants a security interest in the real estate

together with all and singular, the tenements, hereditaments and appurtenances thereto belonging, and the rents, issues and profits thereof, and all apparatus and fixtures of every kind for the pur-

pose of supplying or distributing heat, light, water or power, and all plumbing and other fixtures in or that may be placed in any building now or hereafter standing on said land, and also all the estate right, title and interest of the said mortgagor in and to said premises.

Following the covenants and obligations undertaken by the mortgagor, the mortgage further states,

AND AS ADDITIONAL SECURITY for the payment of the indebtedness aforesaid, the mortgagor does hereby assign to the mortgagee all the rents, issues and profits now or which may hereafter become due for the use of the premises hereinabove described.

The mortgage also requires the mortgagor to carry hazard insurance on the property and provides that the insurance company is

authorized and directed to make payment for such loss directly to the mortgagee instead of to the mortgagor and the mortgagee jointly, and the proceeds ... may be applied by the mortgagee at its option, either to the reduction of the indebtedness hereby secured, or to the restoration or repair of the property damaged.

The Debtor asserts that the pledge of fixtures, apparatus, rents, issues and insurance proceeds creates a security interest in property other than the Debtor's principal residence and thus, the restrictions on the modifications of certain secured claims set forth in § 1322(b)(2) do not apply. Assuming these restrictions do not apply, the Debtor is free to modify the secured claim in the manner set forth in her proposed plan. The Debtor argues, alternatively, that even if the claim is secured only by her principal residence, the terms of the plan extending the payment of the arrearage beyond the date of the last scheduled payment under the mortgage constitute a "cure" under subsection (b)(3) rather than a "modification" of the mortgage terms.

CONCLUSIONS OF LAW

Section 1322 states in relevant part that a plan may:

. . . .

(b)(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the Debtor's principal residence;

(b)(3) provide for the curing or waiving of any default; and

. . . .

(b)(5) notwithstanding Paragraph 2 of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Under these statutory provisions, if the mortgage at issue is deemed to be secured only by the Debtor's principal residence, the plan may not modify the rights of the holder of the secured claim. Subsection (5) provides that, notwithstanding this prohibition of modification, the arrearage under such a mortgage may be cured within a reasonable time provided the final payment under the mortgage is due after the date of final payment under the Chapter 13 plan, while subsection (3) allows the cure of any other default. The Debtor here seeks to pay the existing arrearage over a 35–month period, notwithstanding the fact that the final payment under the mortgage is due long before the 35–month plan is completed. The Debtor, therefore, must establish that the mortgage is secured by property other than her principal residence so that she may modify the claim and pay-off the arrearage despite the restrictions of § 1322(b)(2).[1] The Court finds that based on the language pledging rents and issue from the property as additional security, the claim of Independence One Mortgage Company is secured by other property in addition to the Debtor's principal residence and the restrictions on modification of se-

cured claims under § 1322(b)(2) do not apply.

The legislative history relating to § 1322(b)(2) has been reviewed by numerous courts and it is generally accepted that the underlying Congressional intent was to protect institutional lenders engaged in home mortgage financing. *See, e.g., First Nat. Fidelity Corp. v. Perry,* 945 F.2d 61, 63–64 (3d Cir.1991); *In re Hart,* 923 F.2d 1410, 1412–13 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Company,* 895 F.2d 123 (3d Cir.1990); *In re Seidel,* 752 F.2d 1382, 1386–87 (9th Cir.1985); *Grubbs v. Houston First American Savings Association,* 730 F.2d 236, 242–46 (5th Cir.1984 en banc); *In re Davis,* 91 B.R. 477 (Bankr. N.D.Ill.1988); *In re Reeves,* 65 B.R. 898, 899–900 (N.D.Ill.1986). Despite this general consensus, several divergent lines of authority have developed regarding (1) when a secured claim is secured *only* by an interest in the debtor's principal residence;[2] and (2) whether the payment through the Chapter 13 plan of a mortgage claim which has been fully accelerated prepetition due to default constitutes a *modification* of the secured claim or merely a *cure.*[3]

## 1. Fixtures and Insurance Proceeds

■ The primary issue in this proceeding is whether the claim is secured only by the debtor's principal residence due to the pledge of fixtures, apparatus, insurance proceeds and rents under the mortgage instrument. A similar issue was addressed by the district court for the Northern District of Illinois in *In re Reeves,* 65 B.R. 898 (N.D.Ill.1986). *Reeves* involved a claim for goods installed under a retail home improvement contract which was secured by the real estate, fixtures attached thereto, the goods installed under the contract, and the proceeds of such goods upon removal.

---

**1.** The Debtor may not seek to cure the default under subsection (5) since the final payment under the mortgage is due before the completion of the proposed plan.

**2.** Contrast the line of authority embodied in *In re Williams,* 109 B.R. 36 (Bankr.E.D.N.Y.1989), with that in *Wilson v. Commonwealth Mortgage Co.,* 895 F.2d 123 (3d Cir.1990).

**3.** Contrast the line of authority embodied in *Grubbs v. Houston First American Savings Assoc.,* 730 F.2d 236 (5th Cir.1984), with that in *In re Seidel,* 752 F.2d 1382 (9th Cir.1985); *In re Davis,* 91 B.R. 477 (Bankr.N.D.Ill.1988).

In *Reeves*, Judge Moran held that the claim for home improvement work was secured by property other than the debtor's primary residence since the mortgage instrument granted a security interest in fixtures as defined under Article 9 of the Uniform Commercial Code, as well as in the real estate and fixtures under real estate law. *Id.* at 901. The court looked at the legislative history and concluded that § 1322(b)(2) should be narrowly construed when the secured creditor does not hold a purchase money mortgage. *Id.* at 900. "A loan for the purpose of home improvement is not the long-term mortgage financing which Congress sought to protect in § 1322(b)(2)." *Id.* (quoting *In re Lyons*, 46 B.R. 604, 606 Bankr.N.D.Ill.1985). Thus, the court strictly applied the literal language of § 1322(b)(2) and looked solely to the terms of the security interest held by the creditor to determine whether the payment schedule could be modified. *Id.*

The retail installment contract in *Reeves* granted a security interest in the real estate "together with all improvements, tenements, easements, fixtures and appurtenances ...", as well as "the above-described goods and all accessories, parts and other property now or hereafter at any time owned by buyer and installed therein or affixed thereto and all proceeds thereof," and further provided that "any proceeds of disposition of the goods after repossession thereof by the seller may first be applied by the seller to the payment of expenses." *Id.* at 900–901. The court held that this language was sufficient to create a security interest in the goods which would be classified as fixtures under Article 9 of the Uniform Commercial Code in addition to a security interest in fixtures as defined under real estate law. Since the meaning of "fixtures" under the UCC encompassed goods which retained a separate status as personalty and which could be repossessed and removed from the property, the security interest granted under the retail installment contract was broader than real estate law and included additional security other than the debtor's personal residence. *Id.* at 901. The court concluded, therefore, that neither the underlying policy nor the literal language of § 1322(b)(2) provided any basis for prohibiting a modification of the payment terms.

The case at bar, however, is distinguishable from *Reeves*. This matter involves a purchase money mortgage secured by "rents, issues and profits thereof and all apparatus and fixtures of every kind for the purpose of supplying or distributing heat, light, water or power, and all plumbing or other fixtures" that may be placed in any building on the property, as well as an assignment of "all the rents, issues and profits as additional security" and the right to use insurance proceeds to repair the premises or to repay the obligation. Unlike the retail installment contract in *Reeves*, this language does not create an additional security interest in removable goods classified as fixtures under Article 9 of the Uniform Commercial Code. Rather, the language pledging all apparatus and fixtures of every kind for the purpose of supplying or distributing heat, light, water and power and all plumbing and other fixtures placed in the building, create a security interest only in fixtures which are part of the real estate.

This boilerplate language does not constitute additional security for the debt which would preclude application of § 1322(b)(2). *See, e.g., In re Wright*, 128 B.R. 838, 843 (Bankr.N.D.Ga.1991) (holding that the pledge of "machinery, apparatus, equipment, fittings and fixtures, including all trade, domestic, and ornamental fixtures, actually or constructively attached" did not include collateral in addition to the debtor's principal residence); *In re Ross*, 107 B.R. 759, 762 (Bankr.W.D.Okla.1989) (holding that the "common boilerplate language in mortgages referring to insurance, rents and profits, buildings, improvements, machinery, equipment and the like did not constitute additional security"). In contrast, those cases holding that a pledge of fixtures does constitute additional security generally include language in addition to the standard boilerplate terms which would encompass certain types of personalty in addition to fixtures under real estate law. *See, e.g., Wilson v. Commonwealth Mort-*

*gage Corp.*, 895 F.2d 123 (3d Cir.1990) (holding that the pledge of "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereinafter installed in or upon the premises" constituted additional security); *Kessler v. Homestead Savings*, 99 B.R. 635 (Bankr.E.D.Pa.1989) (holding that the pledge of "plumbing, cooking, heating, lighting, fixtures, appliances and other appurtenances to the realty as well as on the realty itself" constituted additional security); *In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa.1987) (holding that the pledge of "appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereinafter installed" constituted additional security).

Similarly, the boilerplate language granting the mortgagee the right to receive and use property insurance proceeds in the event of some destruction of the property does not create an additional type of collateral securing the mortgage obligation. *Wright*, 128 B.R. at 844; *In re Ross*, 107 B.R. at 762; *In re DiQuinzio*, 110 B.R. 628 (Bankr.D.R.I.1990). Language which goes beyond the traditional right to use proceeds to pay off the obligation, however, may constitute the pledge of additional security. *See, e.g., Transouth Financial Corp. v. Hill*, 106 B.R. 145 (W.D.Tenn.1989) (holding that the assignment of "any proceeds from any insurance on the property or written in connection with this loan," including unearned or return premiums, in a paragraph entitled "Security," constituted a pledge of optional credit life and disability insurance as security in addition to the real property); *In re Wilson*, 91 B.R. 74 (Bankr. W.D.Mo.1988) (holding that a pledge of credit life, disability and property insurance benefits, including premium refunds constituted additional security). The language in the mortgage at issue here merely authorizes the mortgagee to receive insurance proceeds and use such proceeds to pay down the obligation or repair the property in the event of some destruction, without pledging unearned premiums or requiring the assignment of credit life or other types of insurance proceeds. This boilerplate

language does not constitute a pledge of additional security under § 1322(b)(2).

The Court finds that with respect to the fixtures and insurance proceeds addressed therein, the claim is secured only by an interest in the real property used as the Debtor's principal residence.

## 2. Rents, Issues and Profits

■ The mortgage document, however, also pledges and assigns as additional security, the rents, issues and profits derived from the real estate. The Court finds that this language creates a security interest in property other than the real estate used as the Debtor's principal residence.

■ As with the language regarding fixtures and insurance, a significant split of authority has developed over whether a pledge of rents and profits constitutes additional security. For example, the District Court in *In re Hougland*, 93 B.R. 718 (D.Ore.1988), *aff'd*, 886 F.2d 1182 (9th Cir. 1989), concluded that the grant "as additional security ... all rents, issues, royalties, and profits of the property ..." pledged only a benefit incident to ownership of the property and that the lien on such rents could not be distinguished from the lien on the property. 93 B.R. at 720–21. The Bankruptcy Court in *In re Klein*, 106 B.R. 396 (Bankr.E.D.Pa.1989), rejected this view, however, and reasoned that the "added terms, 'rents, issues, and profits thereof,' must mean that security is taken in something other than the realty itself or they would not be included in the documents." 106 B.R. at 400. This Court agrees with the rationale of *Klein*, that the assignment of rents, issues, and profits as additional security in the mortgage document conveys an interest in addition to the mortgagee's other rights under Illinois law and constitutes additional security for the debt.

■ It is well settled under Illinois law that a mortgagee is not entitled to the rents and profits derived from mortgaged property unless such rents have been expressly pledged under the mortgage documents. *Trustees of Schools v. Thomp-*

*son*, 298 Ill.App. 386, 390, 19 N.E.2d 219 (1939); *Taylor v. Osman*, 239 Ill.App. 569, 574 (1926). Absent such a pledge, the mortgagee will not be entitled to receive rents in the event of default or foreclosure. "The provision in a trust deed, pledging the rents, issues and profits is for the sole purpose of providing a secondary fund or security to protect the mortgagee against loss in the event that upon foreclosure and sale there is a deficiency." *Levin v. Goldberg*, 255 Ill.App. 62, 64–65 (1929). It is equally well settled that the mortgagee is not entitled to actually receive rents under such a clause until he takes actual possession or until possession is taken in his behalf by a receiver. *Taylor v. Osman*, 239 Ill.App. 569, 574 (1926); *DeKalb Bank v. Purdy*, 166 Ill.App.3d 709, 117 Ill.Dec. 606, 610, 520 N.E.2d 957, 961 (1988); *In re Woodstock Assoc. I, Inc.*, 120 B.R. 436, 446–49 (Bankr.N.D.Ill.1990); *Matter of Michigan Avenue National Bank*, 2 B.R. 171 (Bankr.N.D.Ill.1980).

It is clear under these authorities that the pledge and assignment of rents under the mortgage document does convey some equitable rights and security interest in the rents in addition to the real estate itself. The mortgagee may be required to take some additional action to perfect its claim before enforcing such rights or before it will be held accountable for rents accrued during the mortgage term, but the fact remains that there is some property right pledged in addition to the real estate under the mortgage. *See In re Woodstock Assoc. I, Inc.*, 120 B.R. 436, 446–49 (Bankr. N.D.Ill.1990); *Matter of Michigan Avenue National Bank*, 2 B.R. 171, 180–182 (Bankr.N.D.Ill.1980) (discussing perfection of an assignment of rents under Illinois law). The assignment of rents derived from the property does not automatically flow from a mortgage on the debtor's principal residence as an incident of ownership and thus such an assignment of rents creates an additional property right securing the mortgage obligation which removes the secured claim from the application of § 1322(b)(2).

This is consistent with the intended scope of § 1322(b)(2) since real estate used as the debtor's principal residence will generally not generate rental income and the long-term residential mortgage lender would not expect its claim to be paid from such income. Section 1322(b)(2) is intended to protect residential mortgage holders and therefore would not be concerned with assignments of rents as additional security. *In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal. 1986). Such a clause only becomes necessary in the event the property is used for a purpose other than the Debtor's primary residence, such as the two-flat unit in this case which was occasionally rented by the Debtor. By including, in addition to the standard boilerplate clause, language which pledged *as additional security* any rents or profits derived from the property, the lender in this case acknowledged that the property may be used for a commercial, income-producing purpose and sought to have its claim secured by such income, if any. This type of secured claim is outside the intended protection of § 1322(b)(2) and may therefore be modified under the Debtor's chapter 13 plan.

The Court finds that based on the language pledging rents and issue from the property as additional security, the claim of Independence One Mortgage Company is secured by other property in addition to the Debtor's principal residence and therefore the restrictions on modification of secured claims under § 1322(b)(2) do not apply.[4] The Objection to Confirmation is overruled and the Motion to Modify on the grounds that the plan proposed an impermissible modification is denied.

---

4. The Court need not address the Debtor's alternative position that the proposed plan does not modify the secured claim but merely seeks to cure the default since it finds that § 1322(b)(2) does not apply to this claim. The Court notes, however, that the decision of Judge Schmetterer in *In re Davis*, 91 B.R. 477 (Bankr.N.D.Ill.1988), holds that such a plan would effect a modification of the claim within the meaning of § 1322(b)(2).