**In re Dennis Jon IRELAND and Rebecca Ann Ireland, Debtors.**

**Bankruptcy No. 91–5678–8P3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 14, 1992.

Rodney L. Dillon, Sarasota, Fla., for debtors.

Chris C. Larimore, Bradenton, Fla., Chapter 13 Trustee.

David J. Tong, Tampa, Fla., for First Union.

## ORDER ON MOTION TO DETERMINE SECURED STATUS OF CREDITOR, FIRST UNION NATIONAL BANK

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 13 case commenced by a Petition for Relief filed by Dennis Jon Ireland and Rebecca Ann Ireland (Debtors). The matter under consideration is a Motion to Determine Secured Status of First Union National Bank (Bank). The Debtors in their Motion contend that their principal residence is encumbered by a first mortgage held by Suncoast Savings & Loan Association (Savings & Loan) securing an indebtedness of $54,500.00; that the Bank holds a second mortgage on the subject property on which the estimated outstanding balance is $31,591.00; and that the most recent appraisal determined that the property has a resale value of $50,000.00.

Based on these facts, the Debtors contend that by virtue of § 506(a) and (d) of the Bankruptcy Code, the secured claim of the Savings & Loan is limited to the value of the property, which is $50,000.00, and the balance of the claim allowed only as a general unsecured claim by virtue of § 506(a), and that the lien of the Bank should be declared to be void pursuant to § 506(d) of the Code. In addition, the Debtors contend that in any event, the security interest held by the Bank not only encumbers the Debtors' principal residence, but also other properties of the Debtors. Therefore, according to the Debtors, the prohibition against altering or modifying a security interest secured only by the principal residence of the Debtors expressly prohibited by § 1322(b)(2) does not apply and presents no bar to the bifurcation of the claim of the Bank, and in turn to invalidate the Bank's lien to the extent of the unsecured portion of the claim.

The facts relevant to the resolution of the issues raised by the Debtors are without dispute and can be briefly summarized as follows:

On May 26, 1988, the Debtors executed a Promissory Note and Mortgage in the principal amount of $55,160.00 in favor of Money Consultants, Inc. The Mortgage granted Money Consultants, Inc. a first mortgage in the Debtors' principal residence located at 2584 Browning Street, Sarasota, Florida. Through a series of assignments, the Promissory Note and Mortgage were thereafter assigned to the Savings & Loan.

On August 11, 1989, the Debtors executed a Promissory Note and Mortgage in the principal amount of $37,516.97 in favor of the Bank. The Mortgage granted the Bank a second mortgage in the principal residence of the Debtors. The mortgage provides that the mortgage also secures the following additional collateral:

all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits from water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and re-

main a part of the property covered by this Mortgage and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) or herein referred to as the 'mortgaged property'.

Attempts by debtors to bifurcate secured claims where the claim is secured only by a mortgage on real property that is the principal residence of the debtors raise one of the most hotly contested issues litigated not only in Chapter 13 but also in Chapter 7 cases. This procedure, colloquially referred to as "lien stripping," not surprisingly, has received less than uniform treatment by the courts. Research reveals three court of appeals decisions which upheld a Debtor's right to resort to stripping the lien of an undersecured creditor who held a mortgage only on the principal residence of the debtor, notwithstanding § 1322(b)(2). The Ninth Circuit, in the case of *In re Hougland*, 886 F.2d 1182 (9th Cir.1989) held that the creditor's claim on residential real estate could be bifurcated into secured and unsecured portions, and the creditor's rights under the undersecured portion could be modified. The *Hougland* court of appeals relied on the decisions of several bankruptcy courts and a district court, e.g., *In re Harris*, 94 B.R. 832 (D.N.J.1989); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989); *In re Kehm*, 90 B.R. 117 (Bankr.E.D.Pa.1988); *In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa.1987); and *In re Bruce*, 40 B.R. 884 (Bankr.W.D.Va. 1984). While the *Hougland* court recognized contrary decisions, e.g., *In re Russell*, 93 B.R. 703 (D.N.D.1988); *In re Brown*, 91 B.R. 19 (Bankr.E.D.Va.1988); *In re Catlin*, 81 B.R. 522 (Bankr.D.Minn. 1987); *In re Hemsing*, 75 B.R. 689 (Bankr. D.Mont.1987); and *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986), the court agreed with the line of cases which held that lien stripping is not prohibited by § 1322(b)(2). The Ninth Circuit rejected a contention that the court's construction of § 1322(b)(2) will undermine the statute, a point specifically considered in *In re Russell, supra* and in *In re Hynson, supra.*

The Third Circuit Court of Appeals in the case of *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir.1990) agreed with the Ninth Circuit. However, in addition, the *Wilson* court also concluded that the fact that the mortgagee's interest as stated in the mortgage instrument extended to "appliances, machinery, furniture and equipment" in addition to the debtor's residence, permitted bifurcation in a Chapter 13 case because the mortgage held by the mortgagee was not limited *only* to the principal residence of the debtor, but covered additional collateral (emphasis supplied). In *Wilson*, the mortgagor urged that the so-called additional collateral had no independent value, and therefore it was not really additional security which would permit the application of the prohibition against alteration and modification of claims secured by a mortgage covering *only* the principal residence of a debtor. The Third Circuit in *Wilson* rejected this contention by relying on the statement in 5 *Collier*, ¶ 1322.06 at 1322–14–15 (footnotes omitted) to the effect that if mortgagees take a security interest in appliances, furniture and other personalties, such claim may be modified in a Chapter 13 plan and the creditor may not protect its claim from modification by relinquishing its other liens after the bankruptcy is filed. The court in *Wilson* based its decision on the conclusion that the normal principles of statutory construction require that the court accord the natural meaning of the words used in the statute, and when the language used is clear and unambiguous, there is no room to resort to legislative history or extraneous matters. This is so, according to the holding of *Wilson*, because § 103 of the Bankruptcy Code provides that provisions of Chapter 5 apply to all operating chapters, and thus, § 506(a) and (d) apply to Chapter 13 cases. Moreover, according to the court in *Wilson*, since the mortgage in that case encumbered not only the Debtors' principal residence, but also encumbered additional properties of the debtors, the prohibition against modifying rights of secured creditors set forth in § 1322(b)(2) did not apply, and the debtors were authorized to rely on

§ 506(a) and (d) to bifurcate the claim to strip down the mortgage involved.

The holding and the rationale of the *Wilson* court was accepted by several bankruptcy courts. E.g., *In re Stiles*, 74 B.R. 708 (Bankr.N.D.Ala.1987) (claim secured by principal residence and life insurance may be modified); *In re Lapp*, 66 B.R. 67 (Bankr.D.Colo.1986) (claim secured by principal residence and irrigation equipment may be modified); *In re Ramirez*, 62 B.R. 668 (Bankr.S.D.Cal.1986) (claim secured by property serving as principal residence and rental property may be modified); *In re Baksa*, 5 B.R. 184 (Bankr.N.D.Ohio 1980) (creditor cannot prevent modification by canceling security interest in automobile and furniture).

The Tenth Circuit also followed the Ninth Circuit in the case of *In re Hart*, 923 F.2d 1410 (10th Cir.1991), and held per curiam that § 506(a), which is applicable in Chapter 13 cases, clearly permits the separation of an undersecured claim into two components—a secured component and an unsecured component. The court held that while the secured portion has a special protection if it encumbers only the principal residence of the debtor by virtue of § 1322(b)(2), the unsecured portion does not, and may be modified under a Chapter 13 plan. The Tenth Circuit noted that district courts and bankruptcy courts in the Fourth, Sixth and Seventh Circuits favored the protection of only the secured portion of a home. *See In re McNair*, 115 B.R. 520 (Bankr.E.D.Va.1990); *In re Demoff*, 109 B.R. 902 (Bankr.N.D.Ind.1989); *In re Hill*, 96 B.R. 809 (Bankr.S.D.Ohio 1989); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989).

In *Hart*, the Tenth Circuit Court of Appeals also considered the contention which is advanced here that inasmuch as the mortgage lien covers such items as "rents, royalties, profit and stock," the mortgage lien of a mortgagee is secured by more than only the interest in the principal residence of the debtor; therefore, the prohibition against modification of § 1322(b)(2) is not applicable. The district court in *Hart* rejected this proposition because it found that the collateral described in the mort-

gage instrument did not exist; therefore, the interest of the mortgagee was secured only by the principal residence of the debtor and was fully protected by § 1322(b)(2). However, the Tenth Circuit reversed the district court in *Hart*, in part, because the district court had no jurisdiction to make such findings of fact because it went beyond the factual findings of the bankruptcy court and then used these findings to reverse the legal conclusion of the bankruptcy court. However, in footnote 6, the court conceded that illusory items, described as additional collateral, may not be considered and the obligation is secured only by the principal residence of the debtors, citing *In re Wilson, supra; In re Foster*, 61 B.R. 492 (Bankr.N.D.Ind.); *In re Stiles, supra.*

Neither research of counsel nor independent research found any decisions on the court of appeals level which held that § 1322(b)(2) prohibits altering a claim which is secured only by the principal residence of a debtor. However, there are several district court and bankruptcy court cases which so held. Thus, the bankruptcy courts in the Fifth, Eighth and Eleventh Circuits held that bifurcation of a home mortgage encumbering the principal residence of the debtors is prohibited by § 1322(b)(2) of the Bankruptcy Code. *See In re Chavez*, 117 B.R. 733 (Bankr.S.D.Fla. 1990); *In re Sauber*, 115 B.R. 197 (Bankr. D.Minn.1990); *In re Schum*, 112 B.R. 159 (Bankr.N.D.Tex.1990); *In re Kaczmarczyk*, 107 B.R. 200 (Bankr.D.Neb.1989); *In re Russell, supra; In re Catlin, supra.* In the case of *In re Russell, supra*, the district court for the District of North Dakota held that in a Chapter 13 case, the allowed amount of a claim secured only by a security interest in the principal residence of the debtor is for the balance owing on the mortgage on the date of the filing, regardless of the value of the collateral. The court relied on the cases of *In re Hynson, supra*, and *In re Catlin, supra*, where the bankruptcy courts held that it was improper for the debtor to modify a claim which was secured only by a security interest encumbering the debtor's principal residence, even if the value of the residence was less than the amount owed on the

mortgage. The district court in the Northern District of Texas also agreed with this proposition in the case of *In re Nobelman*, 129 B.R. 98 (N.D.Tex.1991), expressly noting and rejecting the Ninth Circuit's reasoning in *In re Hougland, supra*, which the court characterized as strained and unconvincing. The district court in *Nobelman* held that the well-established tenet of statutory construction commands that the general language of the statute does not apply or prevail over matters which specifically deal with the same subject in other parts of the same enactment. *In re Chavez, supra; In re Boullion*, 123 B.R. 549 (Bankr.W.D.Tex.1990); *In re Russell, supra; In re Hynson, supra.*

In light of the confused state of the law on this issue, the Bankruptcy Bench and the Bar eagerly awaited authoritative determination of the reach and scope of § 506(a) and (d). This issue was initially raised, albeit in a Chapter 7 case and not in a Chapter 13 case, in *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988), where the bankruptcy court held that a Chapter 7 debtor could not use § 506(a) to bifurcate an undersecured claim and use § 506(d) to avoid the lien on property as to the unsecured portion of the claim when the property was abandoned by the trustee. On appeal, the district court affirmed the bankruptcy court in an unpublished opinion. The Tenth Circuit Court of Appeals likewise affirmed the lower court. 908 F.2d 588 (10th Cir.1990). The Supreme Court granted certiorari in *Dewsnup v. Timm*, — U.S. —, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991). Six members of the Supreme Court (Judge Thomas not voting) held that a debtor may not bifurcate the claim and strip a lien of an undersecured creditor where the claim of a creditor holding a lien on property of the debtors has been fully allowed pursuant to § 502. Unfortunately, the majority in *Dewsnup* reached its decision based not on the issue resolved below, but based on the fact that the secured claim of the mortgagee had been fully allowed and therefore, it cannot be bifurcated, and the lien on the unsecured portion could not be invalidated pursuant to § 506(d).

Rather than solve the problem and shed light on a very confused state of affairs, *Dewsnup* failed to furnish any help and guidance to the resolution of the issues involved in the present instance. Unfortunately, the Court completely ignored the basis of the holding of the lower courts and especially failed to consider the importance of key provisions of § 506(a) which deal with bifurcation of undersecured claims. This is so because before a debtor may utilize the provisions of § 506(a) to bifurcate a secured claim, the claim must first be an "allowed claim" of the creditor secured by a lien on the property of the debtor, and second, the property must be *property in which the estate has an interest.* Moreover, the majority made it clear that given the ambiguity in the text of § 506(a), the difficulty of interpreting the statute in a single opinion which would apply to all possible fact situations clearly exists. For this reason, the majority pointed out that the opinion focuses only upon the case before the Court, and other facts must receive their legal resolution on another day.

█ In the present instance, the holder of the first mortgage, the Savings & Loan, did not file a proof of claim, albeit the Bank did. It is evident therefore that the claim of the Savings & Loan cannot be an allowed claim because it did not file a claim pursuant to § 501, which is a condition precedent to allowance of a claim by virtue of § 502(a) of the Bankruptcy Code. While it is true that § 501(c) and Bankruptcy Rule 3004 permit a debtor to file a proof of claim on behalf of a non-filing creditor, there is serious doubt whether a debtor may drag a secured creditor who elected not to file a proof of claim into the bankruptcy court for the purpose of utilizing § 506(a) to bifurcate an undersecured claim and § 506(d) to strip the lien of the undersecured creditor. From all this, it follows that since the Savings & Loan does not hold an allowed claim, its claim cannot be bifurcated and in turn, the lien relating to the undersecured portion cannot be invalidated pursuant to § 506(d)(2).

As noted earlier, the Bank did file a proof of claim. Thus, theoretically the debtors may utilize § 506(d) to invalidate the Bank's lien on the basis that the Bank is totally undersecured. However, inasmuch as this is a Chapter 13 case, this brings squarely into focus the ultimate 2–prong question: first, whether or not § 1322(b)(2) prohibits alteration and modification of the Bank's claim; second, if so, does this prohibition apply at all because the claim of the Bank is not secured solely by the principal residence of the debtors, but is secured also by other properties described in the mortgage instrument.

Considering the first proposition, this Court is satisfied that notwithstanding the cases which support the view that a debtor may bifurcate an allowed claim secured by a lien on the principal residence of a debtor, § 506(a) and (d) may not be used in a Chapter 13 case. This Court is in agreement with cases decided in the Fifth, Eighth and Eleventh Circuit, *In re Chavez, supra; In re Sauber, supra; In re Schum, supra; In re Kaczmarczyk, supra, In re Russell, supra; In re Catlin, supra; In re Hart, supra,* which concluded that bifurcation of an allowed claim secured by a lien on the principal residence of a debtor was inappropriate in a Chapter 13 case, and a Chapter 13 debtor may not bifurcate an undersecured claim and invalidate the lien to the extent it secures an unsecured portion of the claim.

This leaves for consideration the second problem which relates to the Debtors' contention that, conceding without admitting that § 1322(b)(2) would prohibit bifurcation and lien-stripping in a Chapter 13 case, in this instance it should not because the claim of the Bank is not secured only by the principal residence of the Debtors, but is secured also by the properties described in the mortgage instrument.

As noted, the mortgage instrument purports to grant a lien, on the Debtors' residence, as well as on

all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits from water, water rights, and water stock, and all fixtures nor or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this mortgage and all of the foregoing, together with said property (or leasehold estate if this Mortgage is on a leasehold) or herein referred to as the 'mortgaged property'.

The issue of additional security was considered by the bankruptcy court in Oklahoma in the case of *In re Ross,* 107 B.R. 759 (Bankr.W.D.Okla.1989). In this case, the bankruptcy court held that the boilerplate language in a mortgage "referring to insurance, rents, profits, buildings, improvements, and the like did not constitute additional security" and modification of the secured claim under § 1322(b)(2) of the Bankruptcy Code was accordingly prohibited. The issue of "additional security" was further addressed in *In re Reeves,* 65 B.R. 898 (N.D.Ill.1986). The *Reeves* court stated that a claim which is secured only by a security interest in the debtor's principal place of residence, as is required prior to the application of § 1322(b), is established when the security interest attaches only to real property and to fixtures created under mortgage and real estate law. In *Reeves,* the mortgage language granted a security interest in fixtures which was created under Article 9 of the Uniform Commercial Code, and not a security interest created under real estate law. This meant that additional collateral besides the principal residence existed, and § 1322(b) did not apply.

In considering what constitutes "additional security" under § 1322(b) of the Bankruptcy Code, courts have adopted a strict statutory interpretation. As stated by the district court in *In re Diquinzio,* 110 B.R. 628 (Bankr.D.R.I.1990), a credit life policy was not additional security, and its existence did not permit modification of the debtors' mortgage. *Id.,* at 629. Additionally, the *Diquinzio* court distinguished cases such as *United Companies Financial Corp. v. Brantley,* 6 B.R. 178 (Bankr.

N.D.Fla.1980), where a life insurance policy was separately pledged as additional security. In *United Companies Financial Corp.*, the court noted the rationale behind its ruling was specific to the circumstances of that case. The court noted that the life insurance policy pledge document was entitled "Assignment of Life Insurance Policy as Collateral."

In the case at bar, the credit life and credit disability insurance purchased by the Debtors lists the Bank as loss payee. The same is true as to the hazard insurance required by the mortgage to be maintained by the Debtors. Moreover, there is no life insurance policy assignment to the Bank, as existed in *United Companies Financial Corp.*

Based on the foregoing, neither the boilerplate language of the Debtors' mortgage nor the credit life and disability policies constitute additional security under § 1322(b), which if present, would allow for the modification of the Bank's claim. Accordingly, the Bank holds a claim secured only by a security interest in the Debtors' principal residence and therefore, the Debtors may not modify the Bank's claim.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion be, and the same is hereby, granted, and the Bank is hereby determined to be a fully secured creditor.

DONE AND ORDERED.